Hawley and another vs. Tesch and others.

Hawley and another, by guardian *ad litem*, Appellants, vs. Tesch and others, Respondents, and Hawley and others, Appellants.
Hawley and another, by guardian *ad litem*, Respondents, vs. Munkwitz, imp., Appellant.

*February 7 — October 2, 1894.*

*Trusts and trustees: Fraudulent sale of lands:* Bona fide *purchasers: Partnership: Agency: Waiver of right to recover specific property: Accounting: Improvements made by fraudulent vendee: Interest on moneys not paid into court.*

1. Lands held in trust were secretly conveyed by the trustee, in fraud of the trust, for the benefit of himself and his son-in-law, B. Parts thereof were afterwards sold for a fair consideration to an-

Hawley and another vs. Tesch and others.

other son-in-law and to the housekeeper of the trustee, who were ignorant of business affairs and relied implicitly upon the statements and honesty of B. *Held*, that the relationship of said vendees to the trustee was not conclusive evidence that they knew of the fraud; nor, under the circumstances, did the fact that they bought from B. but received deeds executed by the trustee charge them with knowledge of any breach of the trust.

2. Other purchasers of a portion of the lands paid a full and adequate consideration therefor to the trustee, who was an old resident and a prosperous business man and had always borne a good reputation. A finding of the trial court that they had no notice of the fraud of the trustee is *held* to be sustained by the evidence, although it appeared that there was a close relationship and friendship between them and the trustee and his son-in-law B., and that they never took any pains to ascertain whether B. (who ostensibly joined them in the purchase) paid anything for his interest in the land. WINSLOW, J., dissents.

3. Pursuant to a partnership agreement, each of the three partners individually bought an undivided one-third part of certain lands and contributed it to the capital stock of the firm. *Held*, that the purchase was not in any sense a purchase by the firm, and that the fraud of one of the partners in the acquisition of his one-third did not affect the purchases of the others.

4. An agent for the sale of land may abandon his agency, with the knowledge and consent of his principal, and join with others in purchasing the land from such principal. *O'Dell v. Rogers*, 44 Wis. 136, distinguished.

5. *Per* WINSLOW, J. Where, in an action by the *cestuis que trustent* to set aside as fraudulent sales of land by the trustee, an interlocutory order is made adjudging that the defendants are *bona fide* purchasers and ordering a reference to ascertain the amount for which the trustees should account, if the plaintiffs do not appeal from such order, but appear before the referee and prosecute to judgment their claim for the consideration moneys of the sales, they should be held to have abandoned their claim to recover the specific property.

6. A purchaser of lands held in trust, who actively participated in the actual fraud of the trustee for which the sale is set aside at the suit of the *cestuis que trustent*, cannot be credited with improvements voluntarily made on the land; but he may be credited with taxes paid and with the necessary expenses of making sales of the lands to *bona fide* purchasers, of which sales the plaintiffs receive the benefits.

Hawley and another vs. Tesch and others.

7. One who held moneys belonging to a trust estate, but which were claimed by another, was properly charged with simple interest thereon from the commencement of an action therefor by the *cestuis que trustent*, where the other claimant was a party to the action and the holder of the moneys did not bring them into court for the benefit of whichever party should finally be adjudged to be the owner.

APPEALS from the Circuit Court for *Milwaukee* County.

This is an action in equity brought to set aside as fraudulent certain sales of real estate made by *John H. Tesch* and Helen Hawley, executors of the will of Cyrus Hawley, and for an accounting. A demurrer to the complaint was overruled upon appeal to this court. See *Hawley v. Tesch,* 72 Wis. 299.

Cyrus Hawley died June 1, 1871, testate, appointing his widow, Helen Hawley, his son Cyrus Tomlinson Hawley, and the defendant *John H. Tesch* executors and trustees of his will. He died seised of sixty-six acres of land in the town of Wauwatosa, Milwaukee county, and nearly one hundred acres within the city limits of the city of Milwaukee, bounded on the north by Chestnut street, on the south by Grand avenue, on the east by Twenty-Third street, and on the west by Twenty-Seventh street. By his will, which was probated July 3, 1871, he gave the sixty-six acres of land in Wauwatosa to a son, Walliston Kent Hawley. He gave to his wife the use during her life of his homestead, which consisted of that part of the 100-acre tract lying between Grand avenue and Wells street. He gave to her also his personal property and household furniture, and a dwelling house, and directed his executors or trustees to pay her sufficient money to support her, and such of her children and grandchildren as should live with her, until the sum of $20,000, later mentioned in the will, should be received and paid over to the trustee appointed to receive it. The residue of his estate he devised to his executors,

and the survivor of them, in trust for certain purposes, among which was to accumulate a fund of $20,000, which, when accumulated, was to be paid over to Cyrus T. Hawley, to hold in trust and to loan on real estate security and pay over the interest thereon to said Helen Hawley, and, if necessary for her support, to pay her also such part of the principal as should be necessary to maintain her. Other trusts were created by said will in favor of his grandchildren, the appellants in this action, which are unnecessary to be stated here, and full power was given to the executors to sell at public or private sale, for cash or on credit, all the property thus devised to them in trust. All of the executors named in the will accepted the trust and qualified.

The plaintiffs, *Helen Hawley* and *Tomlinson Kent Hawley,* are the children of Cyrus Tomlinson Hawley, who died February 10, 1880. They are still minors. The defendants *Robert N. Hawley, Clara D. Hawley,* and *Helen A. Hawley* are the children of Charles W. Hawley, who died prior to the commencement of this action, and he was a son of Cyrus Hawley. The plaintiffs and the three last-named defendants are the only persons interested in the estate of Cyrus Hawley, except the widow, Helen Hawley. Cyrus T. Hawley became the active executor of the estate, and gave his whole time to the management thereof until his death. Helen Hawley, the mother, was over seventy years of age and was mentally weak, and never took any active part in the administration of the estate.

Prior to the death of Cyrus Tomlinson Hawley in 1880, some part of the lands devised in trust to the executors had been sold by him under the power of sale in the will, and deeds made by the executors. Some streets had also been opened through the land, and grading had been done to fit the land for sale. At the time of Cyrus T. Hawley's death, no part of the $20,000 fund for the support of the

widow had been raised, and the estate was in debt to the amount of $12,000 or $13,000. In December, 1883, the circuit court of Milwaukee county duly appointed the defendant *Tesch* as special trustee to have charge of the $20,000 fund, in place of Cyrus Tomlinson Hawley, deceased. It was found upon the death of C. T. Hawley that his accounts were in serious confusion, and that he had appropriated moneys of the estate to his own use. *Mr. Tesch* thereupon became and continued to be the active executor of the estate.

For the alleged purpose of raising the $20,000 trust fund, *Tesch*, on the 1st day of August, 1881, made a contract with *Louis D. Vogel*, of St. Louis, for the sale to him of all the remaining lots and lands belonging to the estate, except certain lots partly within the limits of the plank road, and except all but the west one hundred feet of the homestead block, for the price of $30,000. This contract was signed by Helen Hawley, the widow, on the representation, made by *Tesch*, that it was absolutely necessary in the course of the settlement of the estate. This contract was never recorded. Although nominally it was a contract with *Vogel*, it was in fact a contract made for the benefit of *Imre Boos*, a son-in-law of the defendant *Tesch*. *Vogel* was a resident of Missouri, and occupied a clerical position in a manufacturing establishment in that city. He was a nephew of *Tesch's* wife. *Boos* was indebted to *Tesch*, his father-in-law, in the sum of about $25,000, which he had no means of paying. He assisted his father-in-law, *Tesch*, in the drug business in the city of Milwaukee, and also aided *Tesch* in his real-estate operations. The arrangement between *Tesch* and *Vogel* and *Boos* was that *Vogel's* interest in the contract should be one twentieth for the use of his name, and *Boos* should have the remaining nineteen twentieths. *Boos'* interest in the contract was concealed from the *Hawleys*, and was not discovered until shortly prior to the com-.

mencement of this suit.    *Vogel* paid no attention whatever
to the land after the purchase.    It was arranged that *Boos*
should act as the agent of *Vogel*, and *Boos* and *Tesch* re-
tained charge of the land, made sales and improvements,
and opened an account with *Louis D. Vogel* on the books
of *J. H. Tesch* at the drug store.    The proceeds of all sales
of real estate made after August 1, 1881, were credited to
*Vogel* upon this account, and he was charged with all dis-
bursements made for improvements and taxes and other
expenses.    *Boos* and *Vogel* never made any payment what-
ever upon the contract, or, if any, it was merely a nominal
sum.    *Boos* and *Tesch* proceeded to open streets through
lands, and spent large sums of money in grading the same,
and made sales as rapidly as possible.    As the contract
with *Vogel* was never recorded, the deeds upon these sales
were all made by *Tesch* and Helen Hawley as surviving
executors, and, if mortgages were given back, they were
made payable to such surviving executors.    The considera-
tion for such sales was, however, credited by *Tesch* and
*Boos* to the account of *Vogel*, and after the account of
*Vogel* was closed in November, 1883, to the account of
*Boos*, and the defendant *Tesch* was repaid, out of the re-
ceipts arising from the sales, the $25,000 which *Boos* owed
him on August 1, 1881.    The sales made in this way to in-
nocent purchasers amounted to nearly $90,000, which the
plaintiffs have not attempted to set aside in this action, but
for which the defendants *Boos* and *Vogel* and *Tesch* have
been required to account by the judgment in this action,
with interest at seven per cent., figured with annual rests.

The defendants *Vogel* and *Boos* had also caused to be
made to themselves conveyances of a few lots covered by
the contract, for which they paid no money to the estate,
and which they treated as a division among themselves, in
land, of part of the profits of the contract.    These convey-
ances were also set aside as null and void by the decree of

the circuit court. *Boos* erected a dwelling and barn upon the lots so set off to him in severalty, and occupied the same down to the 11th day of April, 1891, when he surrendered possession thereof to John Johnston, who had been appointed trustee of the Hawley estate in the place of *Tesch* and Helen Hawley, who had been removed by an order of the circuit court.

In the latter part of the year 1883, there was still unsold of the trust property about 200 city lots, and three sales were then or soon thereafter made, by which all, or substantially all, of said property was closed out. One of these sales was to the defendant *W. D. Anderson*, and covered several lots, for the consideration of $4,000. Another sale was to the defendant *Emma Eckstein*, covering five lots, for the consideration of $2,000. And the other sale was to the defendant *Charles J. Munkwitz* for the benefit of himself, W. W. Coleman, since deceased, and the defendant *Boos*, in equal shares, and covered nearly 200 lots; the consideration named in the deed being $50,000, but the actual consideration in fact was $75,000. All of these sales are attacked by the plaintiffs as being fraudulent and void, and they claim that they should be set aside, and the title of the property covered by said deeds should be held to be still in said estate. The defendant *William D. Anderson* is a son-in-law of *Tesch*, the defendant *Emma Eckstein* was the housekeeper of *Tesch*, the defendant Coleman was a brother-in-law of *Tesch*, and the defendant *Munkwitz* was intimately acquainted with both *Boos* and *Tesch* and knew the relationship between them. On the part of *Munkwitz* and the heirs of Coleman, who have been substituted as defendants in this action since the death of W. W. Coleman, it was insisted that they were innocent purchasers, without knowledge of any fraud, and the same claim was made by the defendants *Anderson* and *Eckstein*.

The circumstances as to the *Munkwitz* and Coleman pur-

chase are as follows: *Boos* pretended and gave out to *Munkwitz* and to Coleman that the land belonged to the Hawley estate, and proposed that Coleman and *Munkwitz* should purchase the same as a good investment at the price of $80,000, *Boos* pretending at the time to act simply as the agent of the trustees. Coleman and *Munkwitz* declined to purchase alone, but consented to make the purchase at $75,000, provided *Boos* would take a one-third interest in the purchase. Thereafter negotiations were made with *Tesch* for the purchase, *Tesch* pretending to act as the representative of the Hawley estate, but in fact acting for *Boos*, and *Boos* pretending to act as a purchaser with *Munkwitz* and Coleman, but in fact acting secretly as a seller of two thirds of the property to them. These negotiations took place in November, 1883, or about that time, and, as a result or in course thereof, *Munkwitz*, Coleman, and *Boos* concluded to purchase, and made a written contract, dated November 2, 1883, of partnership, which recited that they had that day entered into a partnership with a capital of $90,000 for the purpose of buying, improving, and selling the Hawley real estate, each of them to share one third of the gain or loss; the said real estate to be described in a deed which was to be made by *John H. Tesch* and Helen Hawley, as surviving executors, to *Charles Munkwitz*, and held by him in trust for the three; the purchase price of $75,000 to be paid by the subscribers in equal proportions, each one third,— $45,000 in cash, and for the remainder of $30,000 each was to give his individual notes amounting to $10,000. The sum of $15,000 of the capital stock was to be reserved for the purpose of making all necessary improvements, and was to be paid equally by the subscribers, each one third. The duties of the subscribers were also prescribed in this agreement, by which it appeared that *Charles Munkwitz* was to receive and pay out and keep account of all moneys, and call meetings of the par-

ties; Coleman was to give the influence of his publication
and advertise the property; and *Boos* was to superintend
all grading and improvements that might be necessary,
and act as agent in selling lots. A deed of the property,
made by the executors, *Tesch* and Hawley, was delivered
November 5, 1883, and another deed, for the purpose of
correcting some errors in the previous deed, was made in
May, 1884. Coleman and *Munkwitz* each paid to *Tesch*
the full amount of $25,000 for an undivided one-third in-
terest in the land described in the *Munkwitz* deed, and
they knew nothing of the *Vogel* contract or *Boos'* interest
in the land before making such payments. *Boos* paid noth-
ing for the remaining one-third interest, but claimed and still
claims to hold his third interest under the *Vogel* contract.
Of the $50,000 received by *Tesch* from Coleman and *Munk-
witz*, $20,000 was invested in a mortgage for that amount,
bearing interest at six per cent. per annum, and *Tesch* held
the same in trust for the use and benefit of Helen Haw-
ley, under the provisions of said will, until his removal
as trustee. The remaining $30,000 paid by Coleman and
*Munkwitz* was turned over by *Tesch* as fast as it came into
his hands to *Boos*, or applied upon *Boos'* private account.
After the *Munkwitz* deed was made and delivered, *Munk-
witz*, Coleman, and *Boos* proceeded to further improve the
property, grade the same and lay out streets, build side-
walks and sewers, and proceeded to sell portions thereof to
innocent purchasers.

   After a long trial in the circuit court, the circuit judge
in September, 1890, made the findings of fact substantially
as above set forth, and held the *Vogel* sale to be fraudulent
and void, and required the defendants *Tesch*, *Boos*, and
*Vogel* to account for all sums received upon the sale of lots
to innocent purchasers after the execution of such contract,
with interest at seven per cent. The circuit court also set
aside entirely the *Vogel* contract, and set aside the convey-

ances to *Boos* and *Vogel* in pursuance thereof, as fraudulent and void. The circuit court, however, held the defendants *Eckstein, Anderson, Munkwitz,* and the heirs of W. W. Coleman to be *bona fide* purchasers, without notice of any fraud, but required *Munkwitz* to convey *Boos'* undivided third part of the unsold lands which had been conveyed to *Munkwitz* to the trustees of the estate. An interlocutory order or judgment was also entered at the same time upon the findings, ordering and adjudging the removal of *Tesch* and Helen Hawley as trustees, and the appointment of John Johnston in their stead, and requiring the former trustees to pay over all trust property in their hands to the said Johnston. It was further adjudged that *Boos* and *Vogel* convey to Johnston, the trustee, all the lots to which they had obtained title; also, that *Munkwitz* convey to the trustee one third of the lands remaining unsold covered by the *Munkwitz* deed; also, that *Munkwitz* account and pay over to said trustee one third of the proceeds derived from all sales to *bona fide* purchasers made from said lands, less one third of the expenses for improvements and taxes paid. As to the remaining two thirds of said lands, and the moneys derived from the sale of such part thereof as had been sold to innocent purchasers, it was adjudged that *Munkwitz* and the heirs of Coleman were the owners thereof. It was further adjudged that the defendants *Anderson* and *Eckstein* were innocent purchasers of the lots conveyed to them, without notice of any fraud. It was further ordered that the defendants *Munkwitz, Boos, Vogel,* and *Tesch* account under oath, before Hugh Ryan, Esq., court commissioner, as referee, for the proceeds and avails of all of the lands sold by them which were included in the *Vogel* contract, after deducting the amount actually expended by them in the improvement of said property and for the payment of taxes thereon; also, that they account for the value of the lots and profits of the lands actually

used and occupied by or under either of the said defendants *Boos, Vogel,* and *Tesch,* and that said accounting be had upon the principle of partial payments, with annual rests on the 1st day of August in each year, with interest computed at the rate of seven per cent. per annum on each balance. It was further adjudged that the defendant *Munkwitz* state under oath to the referee the number and description of lots remaining unsold, and account for the amounts received from the sale of lots included in the *Munkwitz* deed and the amount expended for improvements of the lands and paid for taxes and assessments. It was further ordered that, as to the defendants *Anderson, Eckstein,* and the heirs of W. W. Coleman, said complaint be and was thereby dismissed, and also that the complaint be dismissed as to the defendant *Munkwitz,* except for the purposes of an accounting as aforesaid.

Numerous exceptions were filed to the aforesaid findings on behalf of the plaintiffs, *Helen Hawley* and *Tomlinson Kent Hawley,* and also on behalf of the defendants *Robert N. Hawley, Clara D. Hawley,* and *Helen A. Hawley,* but no appeal was taken from that order, and thereafter the accounting was proceeded with before the referee on the principles laid down in the order.

Upon the coming in of the report of the referee, the same was confirmed, and thereupon final judgment was rendered, reaffirming the removal of the former trustees, *Tesch* and Helen Hawley and the appointment of John Johnston in their stead; setting aside and declaring null and void the *Vogel* contract of August 1, 1881; also, setting aside all deeds of lots made by the executors to *Imre Boos* and to *Louis D. Vogel;* also, approving and confirming a conveyance made by *Munkwitz* and wife to Johnston, as trustee, October 7, 1891, of the undivided one-third of the real estate covered by the *Munkwitz* deed which had not been sold to innocent purchasers, and divesting *Boos* of all title

to said undivided one-third; also, adjudging that the defendants *Boos* and *Vogel* pay to Johnston, as trustee, the sum of $102,811.55, with interest at seven per cent. per annum from August 1, 1892, and, in case said *Boos* and *Vogel* failed to pay the same, that said *Tesch* pay the same · to said Johnston, as trustee aforesaid; also, adjudging that the defendant *Boos* pay to the trustee certain smaller sums, amounting in all to the sum of $2,164.82, arising out of land covered by the *Munkwitz* deed; also, that *Munkwitz* assign to Johnston, as trustee, an undivided one-third of certain contracts for the sale of land, being a part of the lands covered by the *Munkwitz* deed. It was further adjudged that *Munkwitz* was an innocent purchaser of an undivided one-third of the land conveyed to him by the executors' deed; that Coleman was an innocent purchaser of another undivided one-third of said land; and that the defendant *Eckstein* was an innocent purchaser of the lots conveyed to her, and that the defendant *Anderson* was an innocent purchaser of the lots conveyed to him. As to all these innocent purchasers the action was dismissed, with costs. The plaintiffs recovered costs of the defendants *Tesch*, *Boos*, and *Vogel*.

The plaintiffs and the defendants *Robert N. Hawley*, *Clara D. Hawley*, and *Helen A. Hawley* appealed from so much of the final judgment as adjudges — first, that the defendants *Munkwitz*, *Coleman*, *Anderson*, and *Eckstein* were innocent purchasers of the real estate conveyed to them; second, that the defendant *Boos* should be allowed the sum of $5,000 on account of the house and barn built by him upon a part of the property; third, that the defendants *Boos* and *Vogel* should be allowed for the money spent by them for grading and other improvements and taxes in the management, care, and sale of the property embraced in the *Vogel* contract; fourth, that the defendant *Boos* should be allowed one third the money expended by the firm of Munkwitz, Coleman & Boos for improvements and

taxes and other expenses in the management and sale of
the property conveyed to *Munkwitz;* fifth, that the defend-
ants *Boos* and *Vogel* should not be charged for damages
sustained by the estate for mismanagement in handling and
disposing of the property.

The defendant *Munkwitz* appealed from that part of the
judgment which required him to pay $1,133.23, as interest
from January 1, 1888, to September 19, 1890, at seven per
cent. per annum, upon $5,956.58, which the referee found
that *Mr. Munkwitz* had in his hands on account of the one-
third interest of the defendant *Boos* in the lands conveyed
by the *Munkwitz* deed.

All the appeals were argued together in this court.

For the plaintiffs, *Helen Hawley* and *Tomlinson Kent
Hawley,* there were briefs by *Wells, Brigham & Upham,*
and oral argument by *J. R. Brigham* and *H. A. Upham.*
They contended, *inter alia,* that a sale of trust property is
void as to all purchasers, if the agent of the trustee is
joined in the sale as one of the purchasers. The general
rule is that a sale by a trustee to himself, his attorney, his
agent, or to anyone occupying any fiduciary relation to
the trust, is void or voidable at the election of the *cestui
que trust,* and the question of the fairness of the sale or the
price is immaterial. *King v. Remington,* 36 Minn. 15;
*O'Dell v. Rogers,* 44 Wis. 136; *Hoffman Steam Coal Co. v.
Cumberland C. & I. Co.* 16 Md. 456; *Cook v. Berlin W. M.
Co.* 43 Wis. 433; *Keith v. Kellam,* 35 Fed. Rep. 243; *Pooley
v. Quilter,* 2 De G. & J. 327; *Ex parte Burnell, re Lincoln,*
7 Jurist, Part I, 116; *Mitchum's Heirs v. Mitchum Adm'rs,*
3 Dana (Ky.), 260. The court will not permit a third
party to obtain any interest in trust property by joining
with the trustee in the sale. The whole sale is void. The
fact that the purchaser knew that his co-purchaser was in-
capacitated from purchasing is sufficient to avoid the whole
sale.

The deed to *Munkwitz* should be set aside both as to him and as to Coleman upon the ground that they had knowledge of such facts as would put a prudent man upon inquiry. *Brinkman v. Jones*, 44 Wis. 519; *Hooser v. Hunt*, 65 id. 71; *Shaw v. Spencer*, 100 Mass. 382; *Duncan v. Jaudon*, 15, Wall. 175; *Hoppin v. Doty*, 25 Wis. 573. Innocence and want of actual knowledge of fraud is no defense if the party had notice of the facts from which the law may infer fraud. *Wormley v. Wormley*, 8 Wheat. 449. The law considers certain things necessary to be done in order to enable a person to be a *bona fide* purchaser of trust property from trustees, and a prudent man would act accordingly. He must have actually paid the whole price, and he must have got his deed before notice. 1 Perry, Trusts, §§ 219, 221; Story Eq. Jur. § 1502; *Hoffman Steam Coal Co. v. Cumberland C. & I. Co.* 16 Md. 479; *Wormley v. Wormley*, 8 Wheat. 421, 450; *Everts v. Agnes*, 4 Wis. 343; *Nantz v. McPherson*, 7 Mon. (Ky.), 597, 600; Willard, Eq. Jur. (Potter's ed.), 609; *Palmer v. Williams*, 24 Mich. 333; *Burton v. Reagan*, 75 Ind. 77; *Paul v. Fulton*, 25 Mo. 156; *Dugan v. Vattier*, 3 Blackf. 245. Giving security is not equivalent to payment. Sugden, Vendors, *753; 1 Perry, Trusts, § 219; Willard, Eq. Jur. 609; *Jackson v. Cadwell*, 1 Cow. 622; *Jewett v. Palmer*, 7 Johns. Ch. 65; *Patten v. Moore*, 32 N. H. 382; *McBee v. Loftis*, 1 Strob. Eq. (S. C.), 90; *Harris v. Norton*, 16 Barb. 264; *Rhodes v. Green*, 36 Ind. 10; *Thomas v. Graham*, Walker, Ch. (Mich.), 117. Again, a prudent purchaser would see to actual payment of the money to the trustees, and get a receipt for the purchase price. 2 Perry, Trusts, §§ 790, 806, 808; Lewin, Trusts, 474. Again, a prudent purchaser would make some inquiry and ascertain if the sale was satisfactory to the *cestuis que trustent*. Again, the purchase of real estate from trustees is something more than ordinary buying and selling, and no prudent man would undertake himself to perfect

such a purchase. 2 Sugden, Vendors (8th Am. ed.), 531, *756; *Boursot v. Savage*, L. R. 2 Eq. Cas. 141; *Kennedy v. Green*, 3 Mylne & K. 713. Again, a prudent purchaser would not leave the drawing of the deed to the purchaser or his agent. If he does so, he is bound by notice, actual or constructive, of any defect in the title that such seller or agent may have acquired in the completion of such sale, although such seller or agent may conceal the same from the purchaser. *Spencer v. Topham*, 2 Jurist (N. S.), 865; *Majoribanks v. Hovenden*, 6 Ir. Eq. 238; *Espin v. Pemberton*, 3 De G. & J. 547; *McMahon v. McElroy*, 5 Ir. Rep. Eq. 1. All authorities agree that it is a matter of suspicion and requiring inquiry, where the trustee is selling the trust estate to a relative. Such a sale is not of itself void, but it is suspicious, and no person is justified in joining in any such sale without having made the fullest inquiry that the sale is fair and satisfactory to all the *cestuis que trustent*, and that the money is actually paid to the trustees.

The conveyance to *Munkwitz* is void for the reason that it was made in reality to the partnership composed of *Boos, Munkwitz* and Coleman, and notice to one partner is notice to all. *King v. Remington*, 36 Minn. 15; *Sanders' Heirs v. Ruddle*, 2 Mon. (Ky.), 139; *Kilby v. Wilson*, Ryan & M. 178. If a person seeks to avail himself of the benefits of a transaction made for him through the aid of another party, he thereby makes such party his agent and ratifies the acts of such agent, and takes the benefits subject to all the disabilities by which the transaction was effected. He cannot claim the benefits without being subject to the disabilities. 5 Am. St. Rep. 109, note; Mechem, Agency, §§ 130, 148, 167, 174; Wade, Notice, § 668; *Graves v. Spier*, 58 Barb. 349, 386, 387; *McLean v. Clark*, 47 Ga. 25, 70; *Olmsted v. Hotailing*, 1 Hill, 318; *Bennett v. Judson*, 21 N. Y. 239; *Elwell v. Chamberlin*, 31 id. 611, 619; *Stewart*

*v. Johnson*, 18 N. J. Law, 87; *Presby v. Parker*, 56 N. H. 409. The refusal of *Munkwitz* and Coleman to return the property bought through the aid of *Boos*, and the retention of the benefits arising therefrom, are equivalent to ratification of all that *Boos* did to effect the sale, and *Boos* must be treated as their agent, and they are bound by all the knowledge that *Boos* had. In this view of the case, it is immaterial whether the sale was a sale of the whole property to the partnership of *Munkwitz*, Coleman & *Boos*, or a sale of separate undivided thirds to *Munkwitz*, Coleman, and *Boos*. In either event the sale was brought about through the aid and agency of *Boos*, and but for his agency neither *Munkwitz* nor Coleman would ever have purchased an interest in the property. In order that the knowledge of an agent may not bind his principal, the agent must be committing, in the same transaction in which he is employed as agent, an independent fraud for his own benefit and designedly against the principal, which fraud must be of such a nature that its existence and possibility depends upon the concealment of the real facts from the principal. Pom. Eq. Jur. § 675; *Majoribanks v. Hovenden*, 6 Ir. Eq. 238; *Hewitt v. Loosemore*, 9 Hare, 449; *Sankey v. Alexander*, Ir. Rep. 9 Eq. 260; *McMahon v. McElroy*, Ir. Rep. 5 Eq. 1; *Tucker v. Henzill*, 4 Ir. Ch. 513; *Atkins v. Delmege*, 12 Ir. Eq. 1; *Espin v. Pemberton*, 3 De G. & J. 547; *Spencer v. Topham*, 2 Jurist (N. S.), 865; *Bradley v. Riches*, L. R. 9 Ch. Div. 189; *Boursot v. Savage*, L. R. 2 Eq. 142; *Robinson v. Briggs*, 1 Smale & G. 226.

Where a person fraudulently obtains and holds possession of the real estate of another and afterwards expends money in its care and improvement, such wrong-doer is not entitled to any compensation for the money so expended. *Railroad Co. v. Soutter*, 13 Wall. 517; *Waterman v. Dutton*, 6 Wis. 265; *Thompson v. Thompson*, 16 id. 91; *Witt v. Trustees Grand Grove*, 55 id. 380; *Gaines v. Lizardi*, 1

Wood (U. S.), 56; *Gillespie v. Moon*, 2 Johns. Ch. 602; *Woodhull v. Rosenthal*, 61 N. Y. 396, 397; 2 Kent, Comm. 338; *Holmes v. McGee*, 64 Miss. 129; *Dawson v. Grow*, 29 W. Va. 333; *Mill v. Hill*, 3 H. L. Cas. 869; *Van Horne v. Fonda*, 5 Johns. Ch. 416.

*W. J. Turner*, attorney for the defendants *R. N. Hawley, Helen A. Hawley*, and *Clara D. Hawley*, to the point that the defendants *Boos* and *Vogel* should not be allowed for the money spent by them for alleged improvements, taxes, and other expenses incurred by them in the management and sale of the property, cited 3 Pom. Eq. Jur. §§ 1240, 1241; *Witt v. Trustees Grand Grove*, 55 Wis. 376; *Blodgett v. Hitt*, 29 id. 169, 190; *Thompson v. Thompson*, 16 id. 91, 94; *Putnam v. Ritchie*, 6 Paige, 390, 405; *Pitt v. Moore*, 6 Am. St. Rep. 489, note; *Prickett v. Muck*, 74 Wis. 200; 10 Am. & Eng. Ency. of Law, 247; *Searl v. School District*, 133 U. S. 553; *Woodhull v. Rosenthal*, 61 N. Y. 382, 396; *Jackson v. Loomis*, 15 Am. Dec. 350, note; *Wood v. Wood*, 83 N. Y. 575; *Wood v. Conrad*, 50 N. W. Rep. 95; *Cable v. Ellis*, 120 Ill. 136; *Holmes v. McGee*, 64 Miss. 129; Newell, Ejectment, 631; *Carter v. Brown*, 35 Neb. 670; *Jones v. Steam Stone Cutter Co.* 20 Fed. Rep. 477.

*W. H. Timlin*, of counsel, for the defendants *R. N. Hawley* and others.

*Joshua Stark*, for the defendant *Tesch*, contended, *inter alia*, that trustees have an inherent right to be reimbursed for all expenses properly incurred in the execution of the trust. Hill, Trustees, 570; 7 Am. & Eng. Ency. of Law, 431; *Sanderson v. Sanderson*, 20 Fla. 292; *Dey v. Codman*, 39 N. J. Eq. 258; *Garves v. Owens*, 58 Hun, 609; *Davoue v. Fanning*, 2 Johns. Ch. 252; *Michoud v. Girod*, 4 How. 583; Kerr, Frauds, 333, 345, 347; 2 Perry, Trusts, §§ 910, 912, 913, 915; 2 Pom. Eq. Jur. § 1085. These allowances are made even when the trustee has acted in violation of the trust. In such case the trustee will be charged inter-

est, and if the violation of the trust be gross, compound interest, and he may also be denied all compensation for time and services devoted to the care and disposition of the subject of the trust; but while he will be charged interest and denied compensation, he will be allowed actual disbursements · necessarily incurred in the management of the estate, or clearly beneficial thereto, either as enhancing its value or increasing its productiveness. In many cases such allowances·are made to persons held to be trustees by implication, on the ground of fraud. *Fox v. Mackreth,* 1 Lead. Cas. Eq. (3d Am. ed.), 206, 219; *Oliver v. Court,* 8 Price, 127, 172; *Baugh v. Price,* 1 Wilson, 320; *Ebelmesser v. Ebelmesser,* 99 Ill. 541; *Kinney v. Knoebel,* 51 id. 112; *Fishbeck v. Gross,* 112 id. 208; *Rotch v. Morgan,* 105 Mass. 426; *How v. Camp,* Walker, Ch. 427.

For the defendants *Munkwitz, Eckstein,* and *Anderson* there were briefs by *Winkler, Flanders, Smith, Bottum & Vilas,* and oral argument by *F. C. Winkler.* They argued, among other things, that the appellants cannot maintain the inconsistent position of prosecuting an appeal with intent to get the lands, after appropriating and holding the price at which they were sold. *Murphy v. Spaulding,* 46 N. Y. 556; *Genet v. Davenport,* 60 id. 194; *Carll v. Oakley,* 97 id. 633; *Bennett v. Van Syckel,* 18 id. 481; *Webster-Glover L. Mfg. Co. v. St. Croix Co.* 71 Wis. 317. One who accepts the benefit of an order or the condition of an order waives the right to appeal therefrom. *Flanders v. Merrimac,* 44 Wis. 621; *Cogswell v. Colley,* 22 id. 399; *Pettit v. Hamlyn,* 42 id. 434; *Abbott v. Johnson,* 47 id. 239; *Likens v. McCormick,* 39 id. 313; *Smith v. Coleman,* 77 id. 343. The same rule applies to all cases of fraud. One who proves a debt under an assignment thereby waives all objection to the assignment which is known to him or of which he has notice at the time of· his proofs. *Littlejohn v. Turner,* 73 Wis. 113. So, too, a creditor who has been defrauded of

his goods, if he sue for and obtain judgment for the price (knowing the fraud), or proves his claim against an estate in insolvency, thereby waives his right to recover the property. *Ormsby v. Dearborn*, 116 Mass. 386; *Seavey v. Potter*, 121 id. 297; *Stoutenburgh v. Konkle*, 15 N. J. Eq. 33. Even the bringing of a suit for the price, which is discontinued, will have the same effect if brought with knowledge. *Bulkley v. Morgan*, 46 Conn. 393; *Adler v. Fenton*, 24 How. 407; *Dibblee v. Sheldon*, 10 Blatchf. 178; *Dellone v. Hull*, 47 Md. 112; *Emma Silver Mining Co. v. Emma S. M. Co. of N. Y.* 7 Fed. Rep. 424; *Bach v. Tuch*, 126 N. Y. 53. So the taking of security for the price waives the fraud and precludes the right of recovering the property. *Joslin v. Cowell*, 52 N. Y. 91.

*E. Mariner*, for the defendants *Coleman*.

The following opinion was filed June 2, 1894:

WINSLOW, J. That part of the judgment of the circuit court which set aside as fraudulent and void the ostensible sale of the great bulk of this valuable estate to *Vogel* for the benefit of *Boos*, the son-in-law of *Tesch*, and of *Tesch* himself, is not appealed from. Its justice is not and could not be questioned. This transaction bore all the badges of fraud known to the law. It was a sham; it was kept secret; it was a conveyance by the trustee of the trust property nominally to another, but in reality to himself and his son-in-law; the nominal consideration was grossly inadequate, and was not in fact paid except as the sales of property afterwards paid it; it was a deliberate scheme to divert from the proper beneficiaries a handsome fortune, which was well-nigh successful. Rarely, we believe, has a court of equity been required to review and condemn so flagrant a breach of duty on the part of a trustee. Let us hope that such occasions will be even more rare in the future.

The important questions raised by the appeal of the

grandchildren which we deem it necessary to discuss are substantially three in number. They are: First, were *Munk-witz*, Coleman, *Anderson*, and *Eckstein* innocent purchasers without notice of fraud by the trustees? Second, should *Boos* and *Vogel* be allowed in the accounting for improvements put by them upon the land? Third, should *Boos* and *Vogel* be charged with damages for mismanagement in handling and disposing of the property?

1. The circuit court acquitted the purchasers named in the first question of all complicity in, and of all notice, either actual or constructive, of, the fraud of *Tesch* and *Boos*, and consequently upheld their titles as *bona fide* purchasers, and required *Boos*, *Vogel*, and *Tesch* to account for the proceeds of the sales made to them, with interest.

We shall spend but little time considering the question as to the *bona fides* of the purchases of *Anderson* and *Eckstein*. It is true that the relations between these purchasers and *Boos* and *Tesch* were intimate. *Anderson* was the son-in-law of *Tesch*, and *Eckstein* was his housekeeper. These facts are very proper to be considered in determining the question of fraud, but they are by no means conclusive. Good faith may still exist, notwithstanding this close relationship. The prices which they paid do not, under the testimony, seem to have been inadequate. Certainly there cannot be said to have been in either case any such disparity between the value of the land and the price paid as would stamp the transaction as fraudulent. It is true that they bought from *Boos* and received deeds executed by trustees, but we do not think that this fact, under the circumstances in evidence, necessarily charges them with knowledge of the existence of any breach of trust. Upon this question, the circuit judge says in his opinion: "It is so manifest that they relied implicitly upon *Boos'* statements and upon his honesty, and that they knew nothing of the *Vogel* sale and were utterly ignorant of business

affairs, that it would be hard, if not contrary to equity, to charge them with notice of a breach of trust merely because their deeds were executed by the trustees.  . . . I cannot say that they were consciously guilty of fraud, and there is certainly no such clear evidence of facts coming to their knowledge, calculated to put them upon inquiry, as to justify me in charging them with constructive fraud." We agree with the conclusions of the circuit judge on this question.

As to the *Munkwitz* and Coleman transfer, the question is one of greater difficulty. It is claimed by the appellants (1) that *Munkwitz* and Coleman had actual notice of the fraud of *Boos*, or at least were informed of such facts as should have put them upon inquiry, which, if followed up, would have led to actual knowledge; (2) that, even if this be not so, the fraud of *Boos* penetrates and vitiates the entire transaction, because *Boos* was the partner of *Munkwitz* and Coleman in the purchase, and they are legally chargeable with his fraud.

As to actual notice the circuit judge says, in the course of his opinion: "It appears by the uncontradicted evidence bearing upon that subject that neither *Munkwitz* nor Coleman knew of the sale to *Vogel*, and that neither of them knew or suspected that *Boos* had or claimed to have any interest, legal or equitable, in the Hawley estate." A very thorough examination of the evidence in the record convinces us that this statement is entirely correct, and with this remark we shall content ourselves on this point.

The contention that *Munkwitz* and Coleman had knowledge of facts which should have put them upon inquiry as to the fraud of *Boos* and *Tesch* was answered by the circuit judge, evidently after mature consideration of the evidence, in the negative. In support of the affirmative of the proposition, many facts which are either admitted or undeniably proven are urged with great vigor and ability by the ap-

pellants' counsel. The most significant of these facts are: That *Tesch* and Coleman were married to sisters and were intimate friends; that *Boos* was married to *Tesch's* daughter, who was Coleman's niece; that *Vogel* was the nephew of both *Tesch* and Coleman; that both *Munkwitz* and Coleman knew that the title was in *Tesch* and Mrs. Hawley as trustees, and that both were active and intelligent business men; that Coleman and *Boos* were on intimate terms, and that Coleman had previously assisted *Boos* in embarking in the distillery business; that Coleman and *Boos* had dealt in mining stocks together; that *Boos* was almost constantly on the land, superintending grading and other improvements, with all the appearance of an owner; that *Boos* and *Munkwitz* were old acquaintances and quite intimate; that neither *Munkwitz* nor Coleman took any pains to ascertain whether *Boos* paid anything for his one-third interest in the land; and, further, that *Munkwitz* made contradictory statements as to his negotiations with *Boos* and *Tesch*, and as to whom he in fact dealt with.

It is unfortunate, in dealing with this question, that we have not the benefit of the testimony of Mr. Coleman, who died after the commencement of the action and before his testimony could be taken. Coleman was the most active man in the making of this purchase. It was to Coleman that *Boos* first suggested the purchase of the land, and Coleman seems to have principally conducted the negotiations on behalf of himself and *Munkwitz* with *Tesch*. Doubtless Coleman could have thrown much light on many matters which are now obscure, but we have not that light, and the case must be decided upon the evidence actually before us.

It is certainly true that many facts in the case, notably those above referred to, showing the close relationship .and friendship which existed between *Tesch*, *Boos*, *Munkwitz*, and Coleman, tend to throw considerable doubt upon

the *bona fides* of *Munkwitz* and Coleman in this transaction; but, on the other hand, there are other facts equally undeniable which tend strongly to establish their entire good faith. Among these may be noticed two important facts, viz., that the sale was for a full and adequate consideration, which, so far as the shares of *Munkwitz* and Coleman were concerned, was paid at once; that *Tesch*, the trustee, was an old resident of Milwaukee, a prosperous business man, and a man who had always hitherto borne a good reputation. The circuit judge evidently considered these facts of great weight, and properly so. It is true these facts alone are not conclusive proof of good faith, nor, on the other hand, are the facts relied upon by appellants conclusive evidence of bad faith. It is, after all, a question of fact from the evidence whether actual knowledge, or notice equivalent to actual knowledge, of the fraud of *Tesch* and *Boos* was proven. Can we say that the conclusions of the trial court are wrong in this respect? Is there any fact proven which the court must say as matter of law is the legal equivalent of such knowledge or notice? On a review of the whole evidence, which could not be gone over in detail without filling a good-sized volume, my brethren are all of the opinion that the findings of the trial court cannot be reversed on this question. The writer of this opinion has been and still is inclined to the opinion that the evidence calls for and justifies a finding to the effect that *Munkwitz* and Coleman had knowledge of facts which should have put a prudent man upon inquiry as to the good faith of the transaction, but as he agrees with the result, upon a ground hereafter stated, he deems it unnecessary to do more than state the fact of his nonconcurrence upon this point.

We come now to the second proposition of the appellants, namely, that the fraud of *Boos* vitiates the entire transaction. In support of this contention it is said, in the

first place, that *Boos* was a partner of *Munkwitz* and Cole-
man in the purchases, and therefore they must be charged
with his knowledge.  Of the general proposition that a
firm is charged with the knowledge of facts known to one
partner in the course of a partnership transaction, there
can be no doubt.  Had there been an existing partnership,
and had *Boos* taken partnership funds and purchased real
estate held in trust, knowing such purchase to be a fraud
upon the *cestuis que trustent*, doubtless the whole trans-
action could be and should be set aside as fraudulent.
This, however, is not such a case.  The purchase of this
land was in no sense a purchase by the firm or a purchase
in the course of partnership business.  It is true that the
articles of agreement between *Munkwitz*, Coleman, and
*Boos* bear date November 2d, and recite that the parties
" have this day entered into a partnership," and it is also
true that the deed of the lands to *Munkwitz* was not exe-
cuted until some days afterwards, and from these facts it
is argued that the conveyance was in fact a conveyance to
the partnership in the course of its business, which business
was the purchase and sale of this identical real estate.
Upon this question the circuit judge very pertinently ob-
serves : "Equity looks not exclusively to words and names,
but considers the very substance of the transactions.  Fol-
lowing down the instrument, we find the arrangement to
be that seventy-five thousand dollars of the capital stock
of the partnership was to consist of lands to be purchased,
not by the partnership, but by the partners individually,
each to pay for or to secure by his individual notes an un-
divided one-third part of the land.  This clearly shows that
the partnership, whether it had been technically formed or
not, had not gone into operation,— that the members had
not as yet brought in, and were yet to bring in, each his
share of the capital stock, so far as the same was to consist
of land.  So that it may consistently be said that *Munkwitz*

and Coleman each bought and paid for an equal interest in this land, and that the interest of *Boos*, and his interest alone, came in through the *Vogel* sale, and that he, and he alone, was a trustee in his own wrong of the property which he contributed to the capital stock of the firm."

We see no fault with this reasoning. It seems to us to amount to a demonstration that each partner was to purchase and contribute to the capital stock of the proposed firm one third of this land, and that the firm, though nominally, perhaps, formed at the time of the agreement, had no business existence until the land was bought. Each partner was to buy his own interest in the land and pay for it with his own funds, and *Munkwitz* and Coleman did do so; and then each contributed his undivided one-third of the land, which he individually had purchased, to the capital stock of the firm.

Looking at the transaction in this light, it seems very clear that this purchase was not a purchase, in any sense, by the firm of Munkwitz, Coleman & Boos, but it consisted of individual purchases by *Munkwitz* and Coleman (and, as they supposed, by *Boos* also) separately of an undivided one-third each of the real estate, and a contribution of such one-third, after its purchase, to the capital of the firm. If this be the proper view of the legal effect of the transaction, it is clear that the purchase by *Munkwitz* or Coleman of his one-third is not affected by the fraud of *Boos* in the acquisition of his one-third. If a person who is a trustee contributes to the capital stock of a firm trust funds, his copartners not knowing their trust character, the *cestui que trust* does not thereby become a creditor of the firm. 1 Bates, Partn. § 481; 1 Ewell's Lindl. Partn. (1st ed.), 313. This is on the principle that the breach of trust or fraud is the act of the individual alone, and not the act of the firm. The same principle applies here, and its logical result manifestly is that the purchases of *Munkwitz* and Coleman, if

made in good faith, are not affected by the fraud of *Boos* in the acquisition of his interest. *Driffill v. Goodwin*, 23 Grant, Ch. 431.

But it is said further by appellants that *Boos* was the agent of *Tesch*, the trustee, in the sale of the property, and so was incapacitated from becoming a purchaser, and that, *Munkwitz* and Coleman having joined in the purchase with the agent of the trustee, the entire sale is void. In support of this contention the case of *O'Dell v. Rogers*, 44 Wis. 136, is relied on. This case holds, in brief, that the active attorney of the executor of an estate cannot buy from the executor property of the estate, and that persons who united with the attorney in the purchase, with full knowledge of the facts affecting his disability, are also chargeable with him as trustees of the property so bought. It seems quite plain that the case is not analogous to the one at bar. Here *Boos* pretended to *Munkwitz* and Coleman that the land belonged to the Hawley estate, and assumed to act as agent of the trustees in inducing Coleman to purchase. Coleman and *Munkwitz* declined to purchase unless *Boos* would take one third. To this *Boos* consented, abandoned his pretended agency, to the knowledge of all the parties, and thereafter Coleman, *Boos*, and *Munkwitz* negotiated directly with *Tesch*. There is no principle which prevents an agent from abandoning his agency with the knowledge and consent of his principal, and then purchasing of his former principal at arm's length and upon an equal footing. This was the transaction as it appeared to *Munkwitz* and Coleman, and the difference between such a transaction and the transaction which was condemned in the case of *O'Dell v. Rogers*, 44 Wis. 136, is very plain.

We do not find it necessary to discuss the effect of the fraudulent concealment which *Boos* confessedly practiced on Coleman and *Munkwitz* in this transaction. He was in fact the owner of the property to be sold, but pretended to

be first an agent for the sale of it, and afterwards an equal purchaser with them. It is urged with much force that this concealment of his real character in the transaction was a material and substantial fraud on his co-purchasers. It is said that there is no reason to think that they would have purchased had they known that *Boos* was in fact selling instead of buying, and instead of being interested in buying on favorable terms was in fact deeply interested in buying on the highest possible terms. It is argued that, conceding that *Boos* was a partner or agent of *Munkwitz* and Coleman in the purchase, still they will not be charged with constructive notice of the facts known to *Boos*, because *Boos* committed an independent fraud on them for his own benefit by concealing the real facts of his relationship to the property. 2 Pom. Eq. Jur. § 675, and notes. This presents an interesting question, but, as above stated, we do not find it necessary to decide it, because we have practically held that *Boos* was not acting as partner or agent of *Munkwitz* and Coleman in the making of the purchase.

The case of *King v. Remington*, 36 Minn. 15, is greatly relied upon by the appellants. We shall not attempt to review it. In many of its facts it is quite similar to the present case. There are, however, important differences in the facts, and when we hold that the purchase in the present case was an independent purchase by each party, and not a partnership transaction, a clear distinction is raised between the two cases, because in that case the purchase which was attacked was held on the evidence to have been a partnership act, so that notice to either party affected both partners.

There is another ground upon which it seems clear to the writer that the appellants cannot now recover the lands conveyed to Coleman, *Munkwitz*, *Anderson*, and *Eckstein*. The law is that a party injured by the fraudulent sale of property made by his trustee has a choice of remedies.

He may affirm the sale and recover the price, or he may disaffirm the sale and recover back the property. But he cannot do both,— they are inconsistent remedies. In this case, the appellants by their complaint attempted to disaffirm the sale and recover the property sold, The circuit court, by its interlocutory order in the nature of a judgment, dated September 17, 1890, adjudged that *Munkwitz*, Coleman, *Anderson*, and *Eckstein* were all innocent purchasers, and that the conveyance to them passed good title, and ordered a reference to ascertain the amounts which *Boos*, *Vogel*, and *Tesch* should account for. The plaintiffs took no appeal from that order, but appeared before the referee on the hearing, and filed a long itemized account of the sales of lands made by *Boos* and *Tesch*, which they claimed *Boos* and *Tesch* should account for. Included among the items of this account were the sums received from *Munkwitz*, Coleman, *Anderson*, and *Eckstein*, and the referee in his report charged all these sums to *Boos* and *Vogel*, and they were included in the gross amount of the judgment rendered on the referee's report. It seems to me very clear that the appellants abandoned their claim to recover the specific property, and by not appealing from the interlocutory order (which was clearly appealable), but, on the contrary, prosecuting their claim to judgment against *Boos* and *Tesch* for the consideration moneys, have barred themselves from now returning to and insisting on their right to recover the specific property. This view is simply stated as the individual view of the writer of this opinion.

2. Should *Boos* and *Vogel* be credited with the amount spent by them in grading and other improvements upon the land? It appeared by the evidence that in 1885 *Boos* built a house and barn on the lots set apart to him, and occupied them as his homestead until April, 1891, when he surrendered possession to Johnston, the new trustee. The buildings cost about $10,000, but the evidence was conflicting

as to the sum which they actually added to the market value of the lots, and $5,000 was allowed and credited to *Boos*· upon the accounting ·on account of the increased value of the lots by reason of such house and barn. There was also allowed and credited $17,010.97 for amounts spent by *Boos* in grading and filling lots and grading and making streets through the property and laying water pipes and sewers. There was also credited to *Boos* one third of the sum of $9,061.90, which amount was spent by *Munkwitz*, Coleman, and *Boos* for grading and street work. Exception was duly taken to the allowance of all of these items, and the question is whether they were properly allowed to *Boos*. The building of the house and barn was of course purely a voluntary expenditure on. the part of *Boos*. The grading and street work were not ordered by the city authorities, but the referee found that the expenditures so made were reasonable, necessary, and advantageous, and enhanced the value of the property more than the amount expended.

We are of the opinion that none of these charges can be allowed. *Boos* was a fraudulent purchaser. He is not charged merely with constructive fraud, but found and amply proven to have been an active participant in the actual and intended fraud of *Tesch*. Such a purchaser cannot, under well-established principles, be credited with improvements voluntarily made on the trust property. The decisions of this court are to this effect. *Waterman v. Dutton*, 6 Wis. 265; *Thompson v. Thompson*, 16 Wis. 91; *Witt v. Trustees*, 55 Wis. 376. For other authorities in support of the proposition, see *Railroad Co. v. Soutter*, 13 Wall. 517; *Gillespie v. Moon*, 2 Johns. Ch. 602; *Woodhull v. Rosenthal*, 61 N. Y. 389; *Dawson v. Grow*, 29 W. Va. 333; 1 Lewin, Trusts (Flint's Notes), 492. There is nothing in the case of *Cook v. Berlin W. M. Co.* 56 Wis. 643, which is at all in conflict with this doctrine. That was a case of constructive, not actual, fraud. It seems questionable whether a trustee

to sell lands could himself be allowed for these improvements. 2 Perry, Trusts, § 526, and cases cited.

Certain other items were allowed to *Boos* in the account, which are complained of, but which we think were correctly allowed. They are for taxes paid on the lands, for commissions paid to real-estate agents in negotiating sales, and expenses of procuring abstracts of title for lots sold. The taxes were paid for the protection of the title, and are plainly properly allowable. Failure to pay them would have been only an additional wrong on the part of *Boos*. The expenses for abstracts and commissions to agents were apparently necessary expenses in making the sales of which the appellants now receive the benefit. Had the trustee himself made the sales, he would have been entitled to credit for such expenses, and we see no good reason why *Boos* should not be so credited.

3. The appellants claim that *Boos* and *Vogel* should be charged with not less than $70,000 for damages caused by their mismanagement in handling the property. On this point we shall only say that we are satisfied that the claim was properly disallowed by the trial court.

The appeal of the defendant *Munkwitz* presents but a single question. The referee found that *Munkwitz* had in his possession $5,956.58 on account of *Boos'* one-third interest in the lands deeded to *Munkwitz*, and charged *Munkwitz* with simple interest on that sum from the commencement of the suit until September 19, 1890, when Johnston was appointed trustee, at which time *Munkwitz* was ready and offered to pay said money over to Johnston. The amount of this interest is $1,133.23. The referee's finding was confirmed by the court, and judgment rendered against *Munkwitz* for the amount. We see no error in this charge. The money belonged to the trust estate. The commencement of the action was in effect a demand for it. Both claimants were parties to the action. *Mr. Munkwitz* might

undoubtedly have protected himself, and at the same time placed the money where it might earn interest for its rightful owner, by bringing it into court for the benefit of whichever party should finally be adjudged to be the owner of it.

No other points require attention.

*By the Court.*— Upon the appeal of *Munkwitz*, the judgment is affirmed, with costs; upon the appeal of the *cestuis que trustent*, that part of the judgment which allows credits for improvements upon the lands is reversed, and in all other respects the judgment is affirmed, with costs to be taxed in favor of the *cestuis que trustent* against *Boos, Vogel*, and *Tesch;* and the action is remanded with directions to modify the judgment as indicated in this opinion and enter final judgment in accordance herewith.

A motion for a rehearing was denied October 2, 1894.