HUTCHINSON *v.* PARK.

Opinion delivered May 14, 1904.

EQUITABLE RELIEF—PARTIES NOT IN PARI DELICTO.—Where a merchant took advantage of the ignorance of a customer, and procured from him a conveyance of his property without consideration, in order to hinder, delay or defraud the customer's creditors, the parties are not *in pari delicto,* and equity will grant relief.

Appeal from Howard Chancery Court.

JAMES D. SHAVER, Chancellor.

Reversed.

STATEMENT BY THE COURT.

In 1885 Sam Hutchinson purchased fifty acres of land from one Parker, the owner thereof, who executed a deed for the same. Sam Hutchinson and his wife, Eliza, moved upon the land, and have since resided thereon. Will Scoggins, a stepson of Sam Hutchinson, assisted them by paying part of the purchase price. Afterwards he threatened to bring suit against them to recover the amount due him. While this controversy was pending, Hutchinson and his wife in 1890 conveyed the land to Park & Sims, a mercantile firm, composed of Sam P. Park and W. O. Sims. The deed recited a consideration of $396. In 1893 Sims conveyed his interest in the land to Sam P. Park. In February, 1901, Park brought this action against Sam and Eliza Hutchinson to recover the land.

In their answer to the complaint defendants admitted that they had executed the deed to Park & Sims, but alleged that there was no consideration for the deed, and that plaintiff had by fraud and deception induced them to execute the deed by advising them that it was necessary for them to do so in order to prevent Scoggins, who was threatening suit, from getting it. They further stated that they were ignorant, and unable to read or write, and, having confidence in the plaintiff and relying on his promise that he would hold the land for them and reconvey

when the lawsuit was over, they made the deed, and had no knowledge that he claimed the land as his own until just before he commenced his action to recover it. They made their answer a cross complaint, and asked that the deed executed by them to Park & Sims be set aside and held for naught, and for other relief.

The plaintiff filed a reply, denying the allegations of the answer and cross complaint, and the case was transferred to the equity docket.

On the hearing the court held that there was no equity in the answer and cross complaint, and gave judgment in favor of plaintiff for the land. Defendants appealed.

*D. B. Sain, W. S. & F. L. McCain,* for appellants.

There was no consideration for the deed. 33 Ark. 95; 48 Ark. 501; 2 Blackstone, Com. 296. The consideration need not be expressed in the deed, but must exist. 4 Kent, 465. A tenant may dispute his landlord's title, if the occupant is induced by fraud to acknowledge an adverse claimant as his landlord. 2 Taylor, L. & T. § 707; 35 Cal. 558; 30 Mich. 240; 43 N. H. 531; 15 Gratt. 277; 74 Ala. 161. Laches of appellee bars recovery. 61 Ark. 529. Where possession has been peaceable for a number of years, the grantee will be estopped from asserting any right he may have had by his laches. Wait, Fraud. Conv. § 264.

*W. C. Rodgers,* for appellee.

The conclusion of the chancellor is sustained by the evidence. 24 Ark. 431; 42 Ark. 521; 1 Wall. 648; 6 Wall. 254. The acknowledgment was cured by the act of 1887. 70 Ark. 166. A conveyance to defraud creditors is good as between the parties and their privies, although it may be avoided by the creditors of the fraudulent grantor. 47 Ark. 301. The law leaves the parties to a contract where it finds them. 10 Ark. 53. As between the parties themselves, the contract is binding. 13 Ark. 593; 11 Ark. 411; 13 Col. App. 116. Fraud will not be inferred, and must be proved. 38 Ark. 419; 89 Fed. 794; 75 Ia. 513; 1 Wash. 550; 135 U. S. 609. Parties seeking relief in a court of equity should go in with clean hands. 57 Ark. 606; 50 Ark. 71.

RIDDICK, J. (after stating the facts.) This is an action to recover a tract of land in which the defendants under whom the plaintiff claims title allege that they were induced to execute the deed to plaintiff through fraud and deception practiced upon them by the plaintiff and without any consideration whatever.

The deed from defendants to plaintiff recites a consideration of $396, but testimony of the witnesses for the defendant tends very strongly to show that no consideration was in fact paid, but that the deed was procured by representations on the part of the plaintiff that it was necessary for the defendants to execute the deed to prevent a creditor from seizing it under execution. One of these witnesses was a brother of the plaintiff, who took the acknowledgments of the defendants to the deed, and whose testimony tends to show that the defendants were induced to execute the deed by such representations, and that no consideration was in fact paid. This witness testified that plaintiff directed him to tell the defendants that the deed was intended for their protection, and that he did so and secured the execution of the deed in that way.

The plaintiff also appeared as a witness, but it is noticeable that he does not say anything was paid for the land, but contents himself with denying that he made the representations charged and with saying that the deed was made for lawful purposes. Now, it was directly charged in the answer and cross complaint that no consideration was paid. The defendants testify to that fact, and the testimony of the brother of the plaintiff supports the charge. In view of this positive testimony, we think that, if the plaintiff paid anything for the land, he should have said so. But, as before stated, he does not, and there is no testimony to contradict the testimony of defendants showing that nothing was paid.

It is true that the deed recites a money consideration, but when it is alleged in this case that a deed has been procured through fraud and without consideration, the question of whether there was in fact a consideration may be investigated. After consideration of the evidence, we have concluded that it shows that there was no consideration for the deed executed by defendants to Park & Sims, but that the conveyance was made at the suggestion of the plaintiff Park, and on his promise that his firm would hold the land for the benefit of the defendants.

The next question is whether the defendants can obtain any relief in equity against a conveyance made by them to defraud their creditors. It is a familiar principle of law that courts of equity will not decree a specific performance of a promise made by a fraudulent grantee to reconvey property to a grantor who has conveyed it to such grantee to cheat, hinder and delay his creditors. In order to discourage the making of such fraudulent conveyances, equity, when the parties are *in pari delicto,* will assist neither of them, but leaves them to suffer the consequences of their own fraudulent acts. 14 Am. & Eng. Enc. Law (2d Ed.), p. 273.

But there are exceptions to the rule that courts of justice will not interpose for the relief of a party who has engaged in a fraudulent transaction. "One of these exceptions is when the party suing, though *particeps criminis,* is not *in pari delicto* with the adverse party. There may be different degrees of guilt between the parties to the fraudulent transaction; and if one party act under circumstances of oppression, imposition, undue influence, or at great disadvantage as compared with the other party concerned, so as to make it evident that his guilt was subordinate to that of defendant, equity may grant relief." For instance, when a stronger mind takes advantage of a weaker, and by persuasion and influence procures the unlawful act, the reason of the rule ceases. The wrong then rests chiefly, if not solely, on the superior mind, and the inferior may be regarded as the mere instrument for accomplishing the purpose of the party by whom the fraud was contrived. Under such circumstances, equity will not in a clear case refuse relief to the weaker party, for, if it did, the party who planned and brought about the illegal act would be permitted to take advantage of his own wrong, and reap a benefit from his own fraud, and the strong would be encouraged to lie in wait for and prey upon the weak. *Davidson* v. *Carter,* 55 Iowa, 117; *Roman* v. *Mali,* 42 Md. 513; *O'Conner* v. *Ward,* 60 Miss. 1025; *Harper* v. *Harper,* 85 Ky. 160, s. c. 7 Am. St. Rep. 583, and note; 1 Story, Equity, § 300; 14 Am. & Eng. Enc. Law (2d Ed.), 279.

Now, in this case the plaintiff is a merchant and business man, while the grantors, who made the conveyance to him and his partner, were ignorant negroes, who could neither write nor

read. They made the conveyance at the solicitation and on the advice of the plaintiff, who told them that it was necessary for them to do so in order to protect them against a threatened suit on the part of a stepson, and that it was for their protection. The man who made these statements to them was the merchant with whom they traded, and in whom they had confidence. As the evidence shows that he was the active party who suggested and advised the fraudulent conveyance, we think this case comes within the exception to the rule to which we have referred. It may, of course, have been an oversight on the part of plaintiff that he did not state what consideration he gave for the deed, and we regret that he was not asked directly to state the consideration, but, taking the evidence as we find it in the record, we are of the opinion that the contention of the defendants should have been sustained.

It appears though that the plaintiff has paid taxes on the land for which he should be reimbursed by defendants. The judgment will therefore be reversed, with an order that an account be stated as to amount of taxes due from defendants to plaintiff, and that upon the payment of such taxes the conveyance from defendants to plaintiff and Sims be set aside and cancelled, and the title revested in defendants.