WOOD *v.* STEWART.

81    41<br>s86   505

Opinion delivered December 10, 1906.

1. ILLEGAL CONTRACT—ENFORCEMENT—PUBLIC POLICY.—Upon the principle that a court of equity will not lend its aid to enforce an illegal contract or one based upon an illegal or immoral consideration, equity will not enjoin a judgment at law upon allegations of the judgment defendant that he had a good defense thereto, but that he consented to judgment against himself in order wrongfully to give the court jurisdiction of a co-defendant, upon the promise of the plaintiff in the judgment that the judgment would not be enforced against him. (Page 46.)

2. JUDGMENT—FRAUD OR MISTAKE IN PROCUREMENT.—A judgment at law procured by fraud or mistake may be vacated or modified by proceeding instituted for that purpose in the court in which it was rendered. (Page 51.)

3. ACTION—TRANSFER OF CAUSE.—Failure of a plaintiff to proceed in the proper court is not ground for dismissal of his complaint, but the cause should, on motion, be transferred to the proper court. (Page 51.)

Appeal from Crawford Chancery Court; *J. Virgil Bourland,* Chancellor; reversed.

*Sam R. Chew,* for appellant.

1. The question whether appellee signed as a witness or as a guarantor was one of fact upon which appellant was entitled to have a jury to pass; and appellant should have been placed in position to have this question properly submitted, in a court of law. 35 Ark. 125.

2. If the allegations of the complaint are true, it does not state facts sufficient to authorize a court of chancery to interfere with the collection of a judgment at law. 50 Ark. 458; 57 Ark. 599. The burden was upon the appellee to aver and prove a meritorious defense. *Supra;* 61 Ark. 339; 48 Ark. 535; 40 Ark. 338.

3. The alleged agreement between appellee and the attorney was a fraud upon the rights of Bell, and upon the court. He is in no position to seek equitable relief. 6 Ark. 79; 43 Ark. 107; Bisph. Princ. Equity (4 Ed.), § 42; 1 High on Inj. § 205.

4. If it be conceded that Matlock was not authorized to represent appellee in the law court, still by his own conduct in that court appellee ratified his action and is bound by it. 50 Ark. 458.

*Winchester & Martin,* for appellee.

1. Viewed in the light of the facts as disclosed by the record, there is no fraud in the agreement. Appellee was lulled into a belief of security by the promise of appellant's attorney, and was kept under that belief until too late to apply for relief to the court trying the case. His only remedy was an appeal to a court of equity. 1 Black on Judgments, § § 369 *et seq.*; 20 Conn. 543; 28 *Id.* 552; 12 N. Y. 156; 15 Hun, 170; 9 N. J. Eq. 246; 22 Gratt. 136; 3 Dana, 536; 30 Md. 437; 28 Conn. 58; 44 Ia. 179; 98 U. S. 61; 40 Ark. 338; 50 Ark. 458; 48 Ark. 535.

2. The findings of the chancellor on the facts will not be reversed unless clearly against the preponderance of the evidence. 44 Ark. 216; 68 Ark. 134; *Id.* 314; 73 Ark. 489.

McCULLOCH, J. Appellant, John F. Wood, purchased a jack from one H. N. Bell for the price of $500, which was paid. At the time of the sale a written instrument in the following form was executed to appellant, the signature thereto of appellee, S. W. Stewart, appearing as shown below, viz.:

"Van Buren, Arkansas, 12-8-02.

"I hereby guaranty the jack, 'Cas Miles,' now at Van Buren, Arkansas, to be good server of mares and a good foal-getter. I further guaranty that he will sire as good crop of mules as any jack now in Arkansas. If he fails to do so, or fails on any of the above guaranty, I agree to refund the purchase money paid for said jack, and take him back and pay purchaser, John F. Wood, a reasonable compensation for care and keep of said jack, said amount to be $100. It is understood that said jack is to be properly handled and kept. I guaranty said jack at this time sound and healthy. I guaranty said jack to be free from climate fever. Jack to be delivered at Dyer, Ark., in good condition.

"HARRY N. BELL."

"Reference:　Taylor National Bank of Taylor, Texas; State Bank of Texarkana, Ark.

"In case said jack fails to come up to written guaranty I agree to pay said J. F. Wood $100 as a forfeit over and above care and keeping.

"HARRY N. BELL.

Witness:　　　　　　　　　　　　"S. W. STEWART,

　　　　　　　　　　　　　　　　"W. N. BOATRIGHT, .

　　　　　　　　　　　　　　　　"O. N. GRAY."

Appellant and appellee both resided in Crawford County, Arkansas, and Bell in Miller County.

Appellant instituted an action in the circuit court of Crawford County against Bell and Stewart, in which he alleged that they had executed to him a written agreement whereby they guarantied said jack and agreed to refund the purchase price and pay appellant a forfeit of $100 and the expense of keeping the jack in the event of a breach of the guaranty. He also alleged that the jack had not come up to the guaranty, and prayed judgment against them for $500, the price paid for the jack with interest, $100 for expenses of keeping it and $100 forfeit. Before the commencement of the action appellant and one of his attorneys had several times mentioned the transaction to Stewart, and claimed that he was liable on the instrument of writing in question, but the latter always asserted that he had only signed it as a witness to Bell's signature, and that he was not liable thereon for any sum.

A short while before commencement of the action appellant's attorney informed appellee, who still insisted that he had signed the writing in question only as witness, that appellant wanted to sue on the writing and join appellee and Bell both in the suit as defendants, so as to give the circuit court of Crawford County jurisdiction of the person of Bell upon service of summons in Miller County where he resided; and said attorney proposed to appellee that if he (appellee) would offer no defense to said action, and judgment should go against him, appellant would not enforce the judgment against him. Appellee accepted this offer, the action was commenced and summons was served on Bell in Miller County, and on appellee in Crawford County. Bell employed an attorney, who filed an answer for appellee denying any

liability upon the writing in question, and alleging that he signed same only as a witness to Bell's signature. He also filed for Bell a plea questioning the jurisdiction of the court on the ground that he had been summoned in another county. On a trial of the same before the circuit judge, sitting as a jury, he found that Bell and Stewart were both liable on the written guaranty, and rendered judgment against both for said sum of $500, the price of the jack, with interest, and the further sum of $100 for the expense of keeping the jack. The judgment expressly provided that execution should not be issued against Stewart until the plaintiff's remedy against Bell should be exhausted. This judgment was not appealed from.

Appellant caused execution to be issued against Bell to the sheriff of Miller County, which was returned unsatisfied, and he then sought to enforce the judgment against Stewart by issuance of execution against him.

Appellee, Stewart, then instituted this suit in equity against appellant to restrain the latter from attempting to enforce said judgment. His complaint, after setting forth the transaction concerning the sale of the jack and the rendition of the judgment and issuance of execution, proceeds as follows:

"Plaintiff now alleges that he did not sign said written guaranty as guarantor, but as witness, and that he was not, at the time said judgment was rendered, and is not now, legally or morally bound by said written guaranty. That he has never seen said writing since he signed the same as witness, but is informed and believes, and charges upon information and belief, that said writing is now in the hands of the said defendant, John F. Wood, or of his attorney of record in said suit. That the said Harry N. Bell, at the time suit was brought upon said written guaranty as aforesaid, was a resident of Miller County, Arkansas, and this plaintiff then and now a resident of Crawford County, Arkansas. That before said suit was instituted the said attorney of record in said suit for the said John F. Wood came to this plaintiff and told him he was going to sue on said written guaranty; that he was going to sue said Bell and this plaintiff; that, if this plaintiff would not defend said suit, he should never be called upon to pay any judgment that might be rendered against him in the suit; that he wanted to try the suit in Crawford County, and if

he would make this agreement with him he would give him a written guaranty signed by himself and his client, the said John F. Wood, that he should never be called to pay anything upon any judgment that might be rendered against him in the case; that this plaintiff told him that his word was good to him, and that he would not defend the suit upon that agreement.

"That afterwards he was sued jointly with the said Bell to the June, 1904, term of the Crawford Circuit Court; that he employed no attorney, and did not defend said suit; that he was summoned as a witness for the said Bell, and testified in the case; that judgment was rendered against him as hereinbefore set out; that he took no steps to have said judgment set aside; did not ask for a new trial; that no bill of exceptions was filed; that he did not know what character of judgment was rendered against him, nor the amount of it; that he was absolutely quiescent in the whole matter, resting implicitly upon the agreement made by him with and at the solicitation of the attorney of record of the said John F. Wood in said case."

The prayer of the complaint is that appellant be perpetually enjoined from attempting to enforce said judgment against appellee.

Appellant filed his answer, alleging that appellee signed the writing as guarantor and was equally bound with Bell; admitted that agreement had been made, as alleged in the complaint, between appellant's attorney and appellee to the effect that appellee should make no defense, and that the judgment should not be enforced against him, but alleged that appellee had violated the agreement by employing counsel, filing an answer and defending the action brought by appellant against him and Bell, and that the agreement was rescinded by mutual consent before the judgment was rendered. Appellant also alleged in his answer that the question of appellee's liability as guarantor was expressly put in issue and adjudicated in the action in the circuit court, and the judgment of that court in said action was pleaded in bar of appellee's right to have it again adjudicated.

The depositions of all the parties to the controversy were taken and read at the hearing of this cause—the depositions of appellant and appellee, appellant's attorney who entered into the agreement with appellee concerning the judgment to be obtained

in the circuit court, Bell and the attorney who appeared for him in the circuit court and the circuit judge before whom the action was tried.

Under our view of the law applicable to this case, it would serve no useful purpose to discuss the evidence in detail, or to determine where the weight of it lies. It is sufficient to say that there is no material conflict between the testimony of appellant's attorney and appellee concerning the agreement they entered into, but they disagree as to what occurred between them after an answer had been filed for appellee in the action. The attorney testified that when the answer was filed, and after appellee failed to have it withdrawn and appeared in court by attorney contesting the suit, he expressly repudiated the agreement, and so notified appellee. On the other hand, appellee testified that he neither employed an attorney nor authorized the filing of the answer, that he did not appear in the action except as witness summoned by Bell, and that appellant's attorney did not notify him of any repudiation of the agreement. He testified that he had no information that he was expected to pay the judgment until long after its rendition and the adjournment of the circuit court. Upon this point the testimony is conflicting, and it is unnecessary for us to reconcile or settle the conflict. The difference lies either in the recollections of the two witnesses as to the substance of a conversation which occurred between them during the progress of the trial in the circuit court, or in a misinterpretation on the part of one of them of the statements made by the other.

As already stated, it is unnecessary for us to attempt to reconcile this conflict, for, according to appellee's own version, he is not entitled to the relief he seeks and which the chancellor granted.

This suit is no more nor less than an effort to require specific performance of appellant's agreement not to enforce the judgment obtained in the circuit court. He sets forth an agreement entered into with appellant for the rendition of a judgment against himself in order that Bell might also be brought into the jurisdiction of the Crawford Circuit Court, and asks a court of equity to enforce appellant's agreement with him not to attempt to collect the judgment. Should a court of equity grant such relief?

The agreement between these parties was one plainly in

violation of the rights of Bell, and operated as a fraud upon the jurisdiction of the circuit court. The statute provides that in an action upon a transitory cause of action instituted against several defendants "the plaintiff shall not be entitled to judgment against any of them on the service of summons in any other county than that in which the action is brought, where no one of the defendants is summoned in that county or resided therein at the commencement of the action, or where, if any of them resided, or were summoned in that county, the action is discontinued or dismissed as to them or judgment therein is rendered in their favor, unless the defendant summoned in another county, having appeared in the action, failed to object before judgment to its proceeding against him." Kirby's Digest, § 6074.

In the action against Bell and Stewart in the circuit court Bell did appear and object to the proceeding against him, but the judgment against his co-defendant who resided in the county barred him absolutely from objecting to the exercise of the court's jurisdiction. He was bound to submit to that jurisdiction unless the action had been discontinued or dismissed as to Stewart or judgment rendered in his (Stewart's) favor. It is true, an answer was filed, and the case was defended in the name of appellee; but he contends now that he neither employed the attorney who filed it nor authorized him to file it, and that he appeared at the trial only as witness for Bell. This contention is the basis of appellee's claim for equitable relief against the judgment, and in order to get such relief he shows that he entered into an agreement to deprive Bell of his right to object to the jurisdiction of the court and to impose upon the court the exercise of a jurisdiction which did not rightfully belong to it. In other words, appellee, in order to get relief preventing the enforcement of this judgment against him, must plead and establish an agreement of his own which was a legal fraud upon his co-defendant and upon the court. He asks for the enforcement of an agreement which he shows was entered into for the sole purpose of wrongfully compelling Bell to submit himself to the jurisdiction of the Crawford Circuit Court, and of compelling the court to exercise that jurisdiction wrongfully. He now says he was not liable at all in the action, but that he agreed not to appear, and consented to judgment for the purpose of wrongfully holding

Bell within the jurisdiction of the court. The judgment was rendered by a court having jurisdiction of the subject-matter and of the person of appellee, and, in order to set it aside or prevent its enforcement, he sets up his own wrongful agreement.

It is a familiar principle that a court of equity will not lend its aid to enforce an illegal contract or one based upon an illegal or immoral consideration. 2 Pom. Eq. Jur. § 929 *et seq.*

The doctrine is most frequently applied in cases where a grantor seeks to regain property which he has conveyed to another for the fraudulent purpose of cheating his creditor. In such cases courts of equity refuse relief and leave the parties where they found them, but the application of the principle is not limited to that particular class of cases.

Whenever a plaintiff comes into a court of equity and must rely, as the foundation of his relief, upon a contract which is illegal, he proves himself out of court, for the court will not lend its aid to enforce such a contract. The bare statement of his grounds for relief bears on its face the death-wound to his cause of action.

It is not essential that the contract should concern an act criminal in its nature before the court will refuse to enforce it. If it is a contract for the doing of an illegal or immoral thing, or one contrary to statute or public policy, whether it be criminal or not, a court of equity will not enforce the contract. Story's Eq. Jur. § § 296, 296*a*; Pom. Eq. Jur. § § 929-939; *Mendel* v. *Davies,* 46 Ark. 420; *Woodruff* v. *Berry,* 40 Ark . 251; *McMullen* v. *Hoffman,* 174 U. S. 639; *Atcheson* v. *Mallon,* 43 N. Y. 147.

Mr. Justice Peckham, in delivering the opinion of the Supreme Court of the United States in *McMullen* v. *Hoffman, supra,* said: "The authorities from the earliest time to the present unanimously hold that no court will lend its assistance in any way towards carrying out the terms of an illegal contract. In case any action is brought in which it is necessary to prove the illegal contract in order to maintain the action, courts will not enforce it, nor will they enforce any alleged rights springing from such contract. In cases of this kind the maxim is, *Potior est conditio defendentis."*

Within this rule fall contracts interfering with judicial pro-

ceedings or wrongfully imposing upon the jurisdiction of the courts.

"All agreements directly or indirectly preventing or controlling the due administration of justice are opposed to the universal and most elementary principles of public policy, whatever be their form and immediate purpose; and, however innocent may be the motives of the parties, they are invalid." 2 Pom. Eq. Jur. § 935; 1 Story's Eq. Jur. § 295; *Goble* v. *O'Connor*, 43 Neb. 49; *Camp* v. *Bruce*, 96 Va. 521.

The effect of this agreement, however free the minds of the parties may have been from any actual intention to perpetrate a culpable wrong, was a fraud not only upon Bell but upon the court. If appellee was not in fact liable on the contract, and Bell only was liable, then Bell was deprived of his right to be sued in the county of his residence, or in the county where summons should be served on him. And it was as well a fraud on the jurisdiction of the court for these parties, in order to apparently give the court jurisdiction, to make an agreement permitting the court to render a judgment against appellee which was fictitious and unenforcible, and was to be considered no judgment at all.

But it is only where both parties to such a contract are *in pari delicto* that courts will refuse to enforce it. Where the party suing is guilty but not equally in wrong, a court should not refuse relief. "Such an inequality of condition," says Mr. Pomeroy, "exists so that relief may be given to the more innocent party, in two distinct classes of cases: 1. It exists where the contract is intrinsically illegal, and is of such a nature that the undertakings or stipulations of each, if considered by themselves alone, would show the parties equally in fault, but are collateral and incidental circumstances attending the transaction, and affecting the relation of the two parties, which makes one of them comparatively free from fault. Such circumstances are imposition, oppression, duress, threats, undue influence, taking advantage of necessities or of weakness and the like, as a means of inducing the party to enter into the agreement or of procuring him to execute and perform it after it had been voluntarily entered into. 2. The condition also exists where, in the absence of any incidental and collateral circumstances, the contract is illegal, but is *intrinsically* unequal; is of such a nature that one party is necessarily

innocent as compared with the other; the stipulations, undertakings and position of one are essentially less illegal and blameworthy than those of the others." Pom. Eq. Jur. § 942; Story's Eq. Jur. § 291.

The first of the foregoing classifications of those who are participants in the wrong contemplated by a contract, but who do not stand equal in the wrong, is recognized by this court in the case of *Hutchinson* v. *Park*, 72 Ark. 509, where it was shown that one party of superior intelligence, who stood in a relation of confidence with another, took advantage of his position to induce the other to execute to him a conveyance in fraud of the rights of creditors. The court held that the parties were not *in pari delicto*. In the case at bar there is not, however, any of the elements falling within the classifications laid down by Pomeroy or within the distinction made by this court in *Hutchinson* v. *Park, supra.* There was no confidential relation existing between appellant or his attorney and appellee, nor was there any sort of advantage taken in making the agreement. It is true, appellant's attorney had a superior knowledge of the law, but his proposition to appellee carried with it full information that the thing sought to be accomplished by the agreement was contrary to law. He said, in effect, to appellee: "The only way I can legally get Bell into the court of this county is to sue you jointly with him and recover judgment against you. If you will agree to make no defense and permit me to take judgment against you, I will not enforce the judgment." Doubtless, both parties were innocent of any actual intention to commit a legal or moral wrong, but they both knew precisely what was to be accomplished, and knew the effect of their agreement upon the rights of Bell; and if either party was caught in the trap, the door of relief is closed equally against them both. Appellee, having agreed to a judgment against himself, can not be heard, either in a court of law or equity, to ask that it be set aside.

It does not appear from the pleadings and evidence, however, that appellee agreed to a judgment against himself for the full amount for which the judgment was rendered. If appellant, while the alleged agreement was in force, procured judgment against appellee for more than the latter had agreed to, or for more than it was agreed that appellant should ask for, then the

judgment should be, to that extent, set aside. It is plain to us that, on the face of the contract set forth in the pleadings, if the appellee signed it as a party and not as a witness, he was not liable for more than $100 forfeit and the expenses of keeping the jack. He was not liable for the return of the price of the jack, as his name is not subscribed to that part of the contract.

When appellee entered into the agreement to make no defense to the action, the only point of difference between him and appellant, so far as the evidence in the record discloses, was as to whether appellee signed the written guaranty as a party or as a witness. No dispute is shown to have existed as to the amount of his liability—the amount was confined to the terms of the written instrument, which it was claimed he had signed as a party, and which shows on its face that he is liable, if at all, only for $100 and the expenses of keeping the jack. In the absence of any evidence that appellee agreed to a judgment for the full amount named in Bell's contract, as well as the part thereof to which his signature is appended, it should be presumed that he agreed to a judgment only for the amount for which, according to the terms of the writing, he would be liable if he signed it as a party and not as a witness. Inasmuch as the question will perhaps be passed upon in a court of law, we will not undertake to decide what the agreement was between the parties as to the amount of the judgment, deeming it sufficient to state the law to be that if the court shall find on another hearing that the agreement as to the judgment remained in force between the parties up to the time of its rendition, and was not rescinded, appellant should only have taken judgment for such amount as they had agreed upon, and that appellee would be entitled to have any part of the judgment in excess of the agreed amount set aside.

Appellee's remedy to vacate or modify the judgment for fraud or mistake in its procurement is complete at law by proceeding instituted for that purpose in the court in which it was rendered. Kirby's Digest, § § 3224, 4431; *Shaul* v. *Duprey,* 48 Ark. 331; *Gorman* v. *Bonner,* 80 Ark. 339.

The failure of appellee to proceed in the proper court is no ground for dismissal of his complaint, but the same should be transferred to the proper court. Kirby's Digest, § 5991; *Daniel* v. *Garner,* 71 Ark. 484.

The decree is reversed, and the cause remanded with leave to the plaintiff to amend his complaint, if so advised, and with directions to transfer the cause to the circuit court of Crawford County for further proceedings consistent with this opinion.