EMERSON and another, Respondents, vs. McDONNELL and another, Appellants.

*May 9—June 21, 1906.*

*Champerty: Attorneys at law: Purchase of clients' interest in lands in suit: Striking out defenses: Settlement: Ratification.*

1. A finding of the trial court that one who negotiated for and obtained from defendants a transfer of their interest in the lands in suit was at the time defendants' attorney, is *held* to be sustained by the evidence.
2. After action brought by the grantees in a tax deed to bar the original owners from any interest in the lands, a purchase by defendants' attorney of his clients' interest in the lands was champertous, and the court properly struck out defenses interposed by him for his own benefit, though in the name of the defendants, and held that defendants were in default.
3. Where in such case defendants' attorney had, by arrangement with plaintiffs' attorney, deposited money with the latter to redeem the lands and thus establish the title and interest which he had secured from his clients, no ratification by the plaintiffs of such arrangement would validate the champertous transfer.

APPEAL from a judgment of the circuit court for Ashland county: JOHN K. PARISH, Circuit Judge. *Affirmed.*

An action under the statute, based on a tax deed, to bar the defendants, as original owners, from having any right or interest in the lands included in the "tax deed." The action was tried by the court and on April 29, 1905, it made its findings of facts upon the questions litigated. The findings material to the questions presented on this appeal are in substance as follows:

On June 6, 1899, Ashland county conveyed the lands in question to the plaintiffs by tax deed. This deed is in due form, properly executed, acknowledged, and duly recorded on that day. This action was commenced July 28, 1899, by the service of the summons and complaint on the defendant *Mc-*

*Donnell,* who, with the defendant *Irvine,* owned the land in co-partnership, and who had authority to act for both defendants in respect to the matter and to employ counsel in this action. Rusk & Hartwell were retained as attorneys for the defendants, and on August 15, 1899, at the direction and by authority of the defendant *McDonnell,* they retained and employed A. W. McLeod, a duly admitted and practicing attorney at Washburn, Wisconsin, as attorney in this action. On August 16, 1899, A. W. McLeod, under such retainer and employment, served a notice of his appearance in the case on Cate, Sanborn, Lamoreux & Park, then the plaintiffs' attorneys, and made an agreement for an extension of time for the service of an answer in the case. The defendants, through their attorneys, Rusk & Hartwell of Chippewa Falls, Wisconsin, negotiated with Cate, Sanborn, Lamoreux & Park for a settlement of the action and for a transfer of defendants' interest in the lands to plaintiffs. About August 3, 1899, and after the time when such negotiations were commenced, A. W. McLeod negotiated and bargained with defendants for the purchase of defendants' interest in the lands, and on September 5, 1899, obtained a contract from them for the sale of their interests at the rate of $5 per forty-acre tract. The lands were then reasonably of the value of from $4 to $5 per acre. A. W. McLeod was well informed of the market value of these lands and knew that they were wild and unoccupied. On September 15, 1899, the defendants, pursuant to the contract, conveyed all their interest in these lands by quitclaim deed, which deed was duly recorded November 11, 1899. After delivery of this deed and the transfer of defendants' interest in the lands, A. W. McLeod, although he had no authority to further appear for and represent these defendants in this action, thereafter obtained a further extension of time, answered in the action, and for his benefit and that of the Washburn Land Company, his grantee, litigated, at his expense, the issues raised by the pleadings. On October 30, 1899, he deposited

with Cate, Sanborn, Lamoreux & Park the sum of $806.15, the amount due for taxes, interest, and charges for redemption if the tax deeds and sales were illegal. The money was so deposited in his own behalf, without authority from the defendants, and for his own benefit. No equivalent deposit was made with the clerk of the circuit court. The court found that plaintiffs' attorneys had been given no authority to settle or compromise the action or to elect to receive or take any sum deposited with the clerk of the court for redemption of such lands from tax sales and deeds; that plaintiffs had no knowledge until after March 24, 1903, that any such 'deposit had been made by A. W. McLeod with their attorneys, but that they had theretofore been informed that no money had been deposited with their attorneys or offered to be paid them on account of these lands and the tax sales unless they should quitclaim to A. W. McLeod. This they always refused to do, and they have never received any money on account thereof from any person. Notice of *lis pendens* in this action was filed in the register of deeds' office on September. 22, 1899, and the Washburn Land Company, of which A. W. McLeod was president, had actual notice of the litigation affecting the title to this land.

The court held that the purchase by A. W. McLeod of defendants' interest and title to these lands, during the pendency of this action and during his retainer and employment as their attorney of record and while negotiations for settlement were being had between the plaintiffs and the defendants, was champertous and void, and for that reason struck out all defenses interposed by him in the action, and held that defendants were in default. Judgment was awarded to plaintiffs on the merits, as prayed for in their complaint, with costs. The court also denied a motion by defendants, made after the trial on the merits and before judgment, for leave to adduce additional evidence pertinent to the question of champerty. This is an appeal from such judgment.

For the appellants there were briefs by *A. W. McLeod* and *W. M. Tomkins,* and oral argument by *Mr. Tomkins.*

For the respondents there was a brief by *James O'Leary,* attorney, and *Reid, Smart & Curtis,* of counsel, and oral argument by *Mr. O'Leary* and *Mr. A. H. Reid.*

SIEBECKER, J.   The court's findings are assailed as not warranted by the evidence in several respects.   It is asserted that the evidence does not sustain the court's conclusion that A. W. McLeod had been retained and employed as defendants' attorney on September 5, 1899, when he bargained with them for the lands in controversy and when, shortly after, they were transferred to him at a price much less than their actual value.   This contention is at variance with an affidavit made by McLeod to the effect that he was retained and employed for the defense and that he had accepted such employment and had given notice thereof to plaintiffs' attorneys, and under it secured an extension of time to answer.   The defendant *McDonnell* and his attorney, Mr. Rusk, corroborate this statement in their affidavits, and the court found in the proceeding on the motion then before it that McLeod had been so retained and employed and thereon awarded the relief demanded.   The facts and circumstances of the transaction, bearing on this question, tend to support the court's conclusion from the evidence, in finding that he was acting as their attorney at the time he bargained for the purchase of the lands involved in this litigation and when he thereafter took a transfer of their title to and interest in them.   It is insisted that the fact of his receiving no compensation for his services is of much weight as showing that his appearance was merely formal and an accommodation to their regularly retained attorneys.   This, however, cannot be held of controlling significance, for in the subsequent purchase of the lands such a claim would naturally be included and discharged.   The evidence tending to support the court's finding upon this issue is suffi-

ciently clear to sustain the court's conclusion, and refutes the claim that it was contrary to the clear preponderance of the evidence.

The court apparently extended to defendants' attorney every opportunity to present the transaction in all its phases and to relieve it from the taint of champerty, and to this end made supplemental findings at his request. After full consideration of the facts it was manifestly constrained to hold that the case presented a situation which showed that defendants' attorney had transgressed the bounds of the law which prohibits attorneys from purchasing from their clients the subjects of pending litigation. The purpose of the law in condemning such transactions was aptly stated in *Miles v. Mutual R. F. L. Asso.* 108 Wis. 421, 433, 84 N. W. 159, and is that:

"The real mischief which the law of champerty aims to prevent is that of encouraging litigation by persons who have no interest therein independent of that to be derived from carrying it on in whole or in part at their expense. That vice exists where an attorney purchases the claim of his client in suit with the intent to thereafter carry on the litigation at his own expense and for his own benefit, the same as where he agrees to carry on litigation at his own expense . . . in the name of another."

Under the circumstances disclosed upon the trial it devolved on the court to apply this principle of the law by declaring the transfer to defendants' attorney void and by denying him the benefit of any defense he sought to invoke. It is a well-established practice that judicial tribunals will refuse to aid in the enforcement of a contract which the law condemns as against public policy, and the merits of the claim cannot be invoked to purge the transaction from the taint of champerty. *Barker v. Barker,* 14 Wis. 131. It is plain that the defendants took no part in nor authorized the defense which was in fact interposed in the action, and that it was in fact made by McLeod for his own benefit. These considera-

tions dispose of all the questions now urged for reversal of the judgment upon the ground that the defendants were not in default and that the judgment upon the merits should go in their favor.

It is claimed also that plaintiffs ratified the arrangement between McLeod and plaintiffs' attorneys for the redemption of the lands from all tax sales and deeds, pursuant to which Mr. McLeod deposited with the attorneys a sum sufficient to pay all taxes, interest, and charges which had accrued thereon. Whether plaintiffs' attorneys had authority for making such an agreement or whether plaintiffs' acts in respect thereto could be a ratification of it under other circumstances need not be considered, since it is established, as found by the court, that this arrangement was made by McLeod upon his individual responsibility and for his benefit and interest only, and that the money so deposited by him with plaintiffs' attorneys was for the purpose of establishing the title and interest which he had secured from defendants by the champertous transfer. It requires no argument to show that this void transfer cannot be made valid through such a course of action by the interested party. There was no valid contract of sale to him and hence there could be no ratification.

We discover no error in the court's refusal to reopen the case after trial and to receive additional evidence. The court considered the proffered letter as in evidence and it has been so considered here. It appears by the record that plaintiffs' tax deed is in due form and properly executed, witnessed, and acknowledged. This makes it presumptive evidence of the sufficiency of the tax proceedings and the transfer of the title to the lands described in it to plaintiffs, and entitles them to a judgment upon the record establishing such title and barring the original owners and all persons claiming under them from all right, title, or interest in the lands described in the complaint.

*By the Court.*—Judgment affirmed.