Blixt v. Janowiak, 177 Wis. 175.

BLIXT and another, Respondents, vs. JANOWIAK and wife, imp., Appellants.

*April 12—May 9, 1922.*

*Champertous contracts: Effect on action: Rescission: Fraud: Cancellation: Accounting: Interest and taxes paid: Offsets.*

1. At common law, a contract savoring of champerty or maintenance cannot form the basis of a cause of action between the parties thereto.
2. The rule that the claim or counterclaim of a party to an action must be dismissed where it appears that such party has a champertous agreement with his attorney or some third person has been so long recognized in this state that it will not be overruled, though it is contrary to the great weight of authority.
3. Where it appeared at the trial that plaintiffs had a champertous agreement with their attorneys, made in another state where such agreement did not bar recovery against defendants, and that their local attorneys had no knowledge thereof, it was not an abuse of the discretion of the trial court to permit the rescission by the parties of the champertous agreement and the substitution therefor of a proper agreement without dismissing the action, the only effect of such dismissal being to cause the delay incident to commencing a new action.
4. In an equitable accounting as to rents and profits during the use and possession of the premises, the defendants, although guilty of positive and gross fraud, will be allowed taxes and interest charges. CROWNHART and OWEN, JJ., dissent.

APPEAL from a judgment of the circuit court for Oconto county: W. B. QUINLAN, Circuit Judge. *Modified and affirmed.*

Prior to February, 1914, one *Joseph Skinkis* had owned and lived on a farm of 140 acres in Oconto county, Wisconsin. On said date he with his wife, the plaintiff *Aggie,* now *Blixt,* conveyed the said farm and sold certain personal property thereon to a Mr. and Mrs. Pirek in exchange for certain real estate in Chicago, where the Pireks lived. In May, 1914, *Joseph Skinkis* and his wife commenced an action in the circuit court for Oconto county against the Pireks to rescind such transfer of real and personal property on the ground of fraud. On June 26, 1915, a judgment was rendered in said action restoring title to the farm to the plaintiffs and for the value of the personal property. On June 29, 1918, by an instrument purporting to be a quitclaim deed, a conveyance of the real estate in question, together with a sale of the personal property, appears to have been made by the plaintiffs to one Stanley Grochocki, and such instrument recorded on July 5, 1915. Neither plaintiff *Joseph Skinkis* nor his wife tried to take possession of said farm after their conveyance in February, 1914.

On October 14, 1915, said Grochocki conveyed by warranty deed to the defendant *John Janowiak,* reciting a consideration of $9,500, made up, it was claimed, of the assumption of then outstanding mortgages of about $4,000 and the then payment of the balance in cash and by check. Stanley Grochocki remained in possession after the quitclaim to him in June, 1915, until his alleged sale to defendant *Janowiak* in October, 1915, and then continued in possession as an alleged tenant of *Janowiak,* being succeeded by George and Helen Gill, who were in possession at the time of the trial.

In March, 1920, a contract was drawn and executed by *Joseph Skinkis* and his former wife, the plaintiff *Aggie*

*Blixt* (they having been divorced in 1918 and she having again married), reciting the former ownership of and the proceedings with reference to the said real estate, and then provided that said *Joseph* consented to the commencement of a further action to be instituted to again recover possession and title to said farm, he quitclaiming to his former wife all his interest in the land, with a provision that she would pay to him five per cent. of the value in excess of $3,000 of the land if so recovered.

On March 15, 1920, an agreement was made with *Aggie Blixt* and her now husband, Alfred Blixt, for the employment of an attorney in Chicago, Illinois, for the prosecution of such lawsuit. It was further agreed that she would pay the sum of $100 toward defraying the necessary costs and expenses of instituting and prosecuting such lawsuit, and in case the employment of local counsel in Wisconsin were necessary she would contribute fifty per cent. of the fees of such local counsel; and further provided that in case of a recovery through said lawsuit of such farm, an undivided one-half interest therein should be conveyed to the Chicago attorney as additional compensation for his services.

On March 25, 1920, this action was commenced against the parties in possession of said farm: Stanley Grochocki, to whom the same had been conveyed by *Joseph Skinkis* and *Aggie,* his then wife; *John Janowiak,* to whom said Grochocki had conveyed; and one John A. Rybczinski, who, it was contended by plaintiffs, had been the confidential agent and trusted advisor of *Mr.* and *Mrs. Skinkis* during the various proceedings, and through whose effort, it was alleged, plaintiffs had been induced to execute the quitclaim deed to Grochocki in June, 1915. The Pireks were also interpleaded as defendants, and asserted by counterclaim their right to certain relief. Their claim, however, was denied by the court, and, no appeal being taken, the questions involved are not here considered.

During the trial the existence of the contract between the Chicago attorney and the plaintiffs was called to the attention of the court.

The contesting defendants then moved that the action be dismissed on the ground of the champertous nature of said contract. It clearly appeared that the attorneys in Wisconsin representing plaintiffs were in nowise parties to said contract and did not know of the same until it was brought to their attention on the trial.

After such motion was made the said attorney from Chicago and the plaintiffs agreed in writing to rescind and abrogate the contract of March 15, 1920, so alleged to be champertous, and there was refunded to the plaintiffs the money they had advanced pursuant to the same. A new agreement was then made between the attorney and the plaintiffs, as against which no objection is made. Upon such facts the trial court denied defendants' motion to dismiss and permitted the action to proceed.

The court gave judgment in favor of the plaintiffs, the substance of the findings being that gross fraud had been perpetrated by the defendants Rybczinski, *Janowiak,* and Grochocki, whereby the plaintiffs *Joseph Skinkis* and *Aggie Skinkis,* his then wife, had been induced to convey the property recovered by them by the judgment in 1915 to the defendant Grochocki; that no consideration had been paid by defendant *Janowiak* to Grochocki for the conveyance by the latter to the former, and that such transaction was also a fraud upon the plaintiffs; that during the time plaintiffs had been out of possession there had been paid as rent to the defendant *John Janowiak* by those in possession the sum of $1,550. The plaintiffs having alleged in their complaint that the defendants Rybczinski and *Janowiak,* during their possession of the farm, had the rents, issues, and profits therefrom, and that the fair cash rental value has been $500 per annum, and asking for the sum of $2,500 for the rent

of said farm, the court gave them judgment for the said $1,550.

It was further found that during the same period there had been paid by defendant *Janowiak* $484.71 for taxes lawfully assessed against said premises and the further sum of $550 for accrued interest on mortgages then outstanding, the validity of which mortgages has not been questioned by plaintiffs. The trial court refused to allow him said two items aggregating $1,034.71 out of said sum of $1,550.

From the judgment entered in accordance with such findings the defendants *Janowiak* have appealed.

For the appellants there was a brief by *John B. Chase* of Oconto and *William J. Dillon* of Chicago, attorneys, and *Minahan, Minahan, Minahan & Duquaine* of Green Bay, of counsel, and oral argument by *Mr. Hugh Minahan* and *Mr. Chase*.

For the respondents there was a brief by *Classon & Whitcomb* of Oconto and *C. C. H. Zillman* of Chicago, and oral argument by *Mr. Zillman* and *Mr. Allan V. Classon*.

ESCHWEILER, J. The appellant, defendant *Janowiak*, challenges the findings of the court below on its determination that fraud was perpetrated by him and defendant Rybczinski, and for which fraud the court reinstated plaintiffs *Aggie Blixt* and *Joseph Skinkis* in the title to and possession of the farm.

We have not set out the details of the evidence in the record because it presents such a clear and convincing picture of gross fraud taking advantage of gross credulity that no useful purpose would be served by spreading them upon our record. It is enough to say that the evidence amply supports the conclusions of the trial court in that regard and they are confirmed.

It is contended by appellants that, under the established

doctrine of this court, the contract between the Chicago attorney and the plaintiffs for the prosecution and carrying on of this lawsuit being champertous and called to the trial court's attention, it was his absolute duty to dismiss this lawsuit on the ground of public policy.

On the other hand it is contended by plaintiffs that if such be the heretofore recognized rule of this jurisdiction it is not in accord with the doctrine on the same subject elsewhere and should be now repudiated, or, in case that be not done, still it was a proper exercise of judicial discretion to permit the parties to such champertous agreement to rescind the same and proceed from that point on with the same litigation upon a new and legitimate contract for its conduct.

That a contract savoring of champerty or maintenance at common law cannot form the basis for a cause of action between the parties to such a particular contract is well recognized by a universal line of authorities and needs no further consideration. The rule is declared in such cases as *Miles v. Mutual R. F. L. Asso.* 108 Wis. 421, 433, 84 N. W. 159; *Ellis v. Frawley,* 165 Wis. 381, 161 N. W. 364.

But this court stands practically alone in holding that, where it appears in the trial of a civil action that either party thereto has a contract savoring of champerty or maintenance with his attorney or some third person, such party's complaint or counterclaim, as the case may be, shall be dismissed, irrespective of the merits and solely because public policy forbids a court to continue hearing a cause where there is such an apparent stain upon the record. See note to *Prosky v. Clark* (32 Nev. 441, 109 Pac. 793) in 35 L. R. A. N. s. 512, 515; 5 Ruling Case Law, 284; 11 Corp. Jur. 270.

Elsewhere the recognized rule seems to be that the taint of champerty or maintenance only affects the litigation between parties to such contract itself. It is the rule in Illinois, where this particular contract was made (*Elser v. Gross Point,* 223 Ill. 230, 240, 79 N. E. 27), and elsewhere.

*Euncau v. Rieger,* 105 Mo. 659, 682, 16 S. W. 854; *Reichert v. Sheip,* 204 Ala. 86, 85 South. 267; *Cress v. Ivens,* 163 Iowa, 659, 145 N. W. 325; *Harness v. B. & O. R. Co.* 86 W. Va. 284, 103 S. E. 866; *Irons v. Croft H. & N. Co.* 86 W. Va. 685, 104 S. E. 111; *Young v. Young,* 196 Mich. 316, 162 N. W. 993; also note in 35 L. R. A. N. s. 512; 11 Corp. Jur. 270; 5 Ruling Case Law, 284.

Appellants contend that the present action should have been dismissed upon the declared doctrine in this state. It is founded upon what was said by this court in *Barker v. Barker,* 14 Wis. 131, that public policy here and at common law requires that the court should, on its own motion, dismiss an action where champerty or maintenance was either in the contract sued upon or in a collateral agreement concerning the carrying on of the litigation made by one or the other parties litigant. In the *Barker Case* the contract sued upon was in violation of the rule concerning maintenance and therefore did not present the situation that we have here. The cases there cited and relied upon other than from Tennessee were where suit had been brought directly upon such objectionable contracts.

From subsequent decisions in the Tennessee court it appears that the earlier decisions were based upon a particular statute subsequently repealed rather than upon what was assumed to be the common-law rule, and the Tennessee court now holds that the duty to dismiss is limited to suits in which the illegal contracts are directly sued upon. *Staub v. Sewanee C., C. & L. Co.* 140 Tenn. 505, 205 S. W. 320.

In *Kelly v. Kelly,* 86 Wis. 170, 56 N. W. 637, a situation was presented similar to the one here before us, and it was stated that though the ruling in the *Barker Case* was contrary to the great weight of authority, nevertheless it had become a substantive part of the law of this state and would not be then changed, and that the plaintiff, as party to the champertous contract for its prosecution, not being there

to consent to the abrogation of such contract, the suit brought against a third person and prosecuted under such champertous agreement was dismissed.

The doctrine was again reaffirmed in *Miles v. Mutual R. F. L. Asso.* 108 Wis. 421, 432, 84 N. W. 159, and again in *Decker v. Becker,* 143 Wis. 542, 128 N. W. 67.

The general doctrine was also declared in *Emerson. v. McDonnell,* 129 Wis. 67, 107 N. W. 1037, where the champertous contract was directly concerned and involved the purchase by an attorney of his client's interest ·in certain lands. The last expression of this court is in *Ellis v. Frawley,* 165 Wis. 381, 385, 161 N. W. 364, where action was brought to recover by one attorney from another the former's claim for an interest arising by virtue of champertous contracts with clients.

. In *Stearns v. Felker,* 28 Wis. 594, it was held in a suit ·between attorney and client concerning a claim for services that although there was. a champertous agreement between them under which such services were rendered and that such champertous agreement could not be enforced, yet that nevertheless the attorney might recover for the· value of his services.

The rule having been so long recognized in this state and the express challenge made in the *Kelly Case* to have this court change its ruling and that having been refused, we are not prepared to nor do we feel called upon to now overturn the former declarations of this. court in that regard.

Such position now taken, however, does not require a reversal of the trial court's ruling permitting the lawsuit to continue. Plaintiff's right of action as against the defendants was not of itself contrary to public policy nor one that a court could refuse to recognize. A dismissal of the present action for the reason contended by appellants would of course be no bar to the immediate commencement of another action by plaintiffs against the same defendants upon a contract or arrangement for the prosecution of the same which

Blixt v. Janowiak, 177 Wis. 175.

would not be in violation of the law as to champerty or maintenance. So a dismissal of the present action would amount to no more than a delay in the final judgment between the plaintiffs and defendants upon the merits. We think it was well within the discretion of the court, therefore, to permit the present lawsuit to continue after being purged of the champertous agreement with counsel, rather than to dismiss the same and thereby require the commencement of a new action. We think such procedure is clearly recognized by what is said in the *Kelly Case, supra.*

We are unable, however, to sustain the ruling of the court on the other question involved in this appeal as to the refusal to deduct from the amount with which the defendants are charged as having been received by them in the shape of rents during the possession of the premises the sums paid for the unquestioned valid assessment of taxes and the interest paid on the unquestioned valid incumbrances on the property.

Were the fraud for which the conveyance from the plaintiffs was set aside that which is designated by the courts as a constructive as distinguished from one in which the elements of positive bad faith and intentional wrongdoing appear, there would not be much doubt that under the recognized doctrine of this state such relief should be granted. *Cook v. Berlin W. M. Co.* 56 Wis. 643, 649, 650, 14 N. W. 808; *Kickbusch v. Corwith,* 108 Wis. 634, 651, 85 N. W. 148.

Here, however, is presented a situation where the defendants are properly found guilty of positive and gross fraud. They are wilful wrongdoers, and it is argued forcibly here and was so held by the trial court, that, being such wrongdoers, they are entitled to nothing that savors of relief as to the situation in which their own wrongdoing placed them.

There is sharp conflict in the authorities on this particular question presented, but we are disposed to follow those which hold, as did this court in the case of *Hawley v. Tesch,*

Blixt v. Janowiak, 177 Wis. 175.

88 Wis. 213, 242, 59 N. W. 670, that on an accounting for rents and profits as against one held as trustee through active fraud (p. 231), nevertheless he shall be allowed his disbursements for taxes paid and other expenses from which the complainants received a benefit.

The question is fully discussed and the authorities on both sides considered in the case of *Loos v. Wilkinson,* 113 N. Y. 485, 487, 21 N. E. 392, and it is there held in effect that the setting aside of the fraudulent conveyance is separate and distinct from the demand for an accounting of the rents and profits during possession, which is in the nature of an equitable proceeding and must be disposed of on equitable principles, and that from rents received shall be deducted payments for taxes, interest, and other items necessarily expended in preserving the property. Such holding does not appear to have been changed in New York since and has several times expressly recognized. *Smith v. Wise,* 132 N. Y. 172, 30 N. E. 229; *Hamilton Nat. Bank v. Halstead,* 134 N. Y. 520, 524, 31 N. E. 900.

The same holding was had as to an allowance for taxes paid in *Lamb v. McIntire,* 183 Mass. 367, 370, 67 N. E. 320. The same rule is recognized as valid in *Morley Bros. v. Stringer,* 133 Mich. 690, 694, 95 N. W. 978. To the same effect, *Hutchinson v. Park,* 72 Ark. 509, 82 S. W. 843; *Sheridan v. McCormick,* 39 N. Dak. 641, 168 N. W. 59, 8 A. L. R. 523, note p. 527. See, also, 12 Ruling Case Law, 643; 27 Corp. Jur. 664, 676.

There is a substantial distinction between payments for such items as the lawful owner would have had to pay if in possession himself and amounts paid or claimed by the fraudulent grantee as a part of the original fraudulent transaction such as were presented and discussed in *McGovern v. Milwaukee M. Co.* 141 Wis. 309, 124 N. W. 269; *Baldwin v. Frisbie,* 163 Wis. 26, 157 N. W. 526.

We deem it more consonant with the idea of an equitable accounting, such as this necessarily is as to the rents and

profits during the use and possession of the premises, to
allow the taxes and interest charges.

*By the Court.*—Judgment modified by deducting the sum
of $1,034.71 from the $1,550 allowed as damages, and as
so modified is affirmed.

CROWNHART, J. (*dissenting*).    The plaintiffs had a farm
in Northern Wisconsin.. They went to Chicago and fell
in with a den of rogues, who through fraud and deceit
stripped them of their land.    In course of time they learned
of the facts and brought an action in the circuit court for
Oconto county to vacate the deed to the defendants and have
judgment for the rents of the farm during the time that
the defendants had unlawfully possessed the farm.

The trial court gave the plaintiffs the relief they asked.
The majority opinion of this court sustains the trial court
with one exception.

The complaint of the plaintiffs alleged that the rental
value of the farm was $500 per year, and demanded judg-
ment for $2,500 "for the rents of said farm while it has
been thus occupied."

The answers of the defendants make no claim for taxes
or interest paid.

The trial court found that the rents amounted to $1,550,
and gave the plaintiffs judgment for that amount.

The defendants assigned as error that the court did not
make any finding as to the payments which the defendants
had made by way of taxes on the farm and interest on a
mortgage existing on the farm, and failed to give them
credit for such payments.    The trial court said in its opin-
ion:

"I think the testimony shows the most astounding situ-
ations invented and perpetrated by Rybczinski that has ever
come to my notice either as a lawyer or since I have been
upon the circuit bench.   Rybczinski, with his men, stopped
at nothing to accomplish their purpose.    They were keen,

astute, versed in the methods of manipulating titles and inventing characters who would make conveyances without consideration and were all willing parties to the conspiracy which ultimately deprived the plaintiffs of their property."

The court was fully justified in this statement by the evidence.

This was a case of wilful and sinister fraud perpetrated by the defendants Rybczinski and *Janowiak* upon the plaintiffs, and the question comes to this court as to whether or not any allowance should be made to said defendants for the money that they paid for taxes and interest on the mortgage, to protect the property which they unlawfully held. These defendants did not pay this money to subserve the property for the plaintiffs, but they paid it in the belief that their criminality would not be discovered and that they would benefit to the extent of the payments. This court in its majority opinion holds that the defendants are entitled to amelioration in the judgment to the extent of the payments so made for taxes and interest. From so much of the opinion as allows the defendants recovery for taxes and interest I respectfully dissent.

The plaintiffs were forced into a court of equity by the actual and wilful frauds of the defendants. As the trial judge well said:

"It must be remembered that the plaintiffs are very poor; that the farm in question was the only property they had, and that from the very nature of the case it required untold efforts, perseverance, and work to uncover and ferret out the different ramifications of fraud which Rybczinski had concocted and executed."

To regain title to their land plaintiffs contracted with their attorney to give one half of the recovery. This contract had the approval of the trial court as it has of this court.

The plaintiffs asked for no accounting in their complaint, but simply that they recover the fair rental value of the

premises unlawfully withheld. That is what the trial court
gave them.

The defendants seek affirmative relief in the nature of
a counterclaim for taxes and interest paid by them. The
majority opinion and the authorities cited are based on the
equitable maxim "He who seeks equity must do equity."

But there is another rule of equity that applies here with
full force, and that is, "He who hath committed iniquity
shall not have equity." And yet another, "He who comes
into equity must come with clean hands." The defendants
"hath committed iniquity"—gross and wilful iniquity—
against these poor plaintiffs. Their hands are not clean;
they are foul with crime. They are entitled to no relief,
either in law or equity.

The defendants could not in a direct action, either in
law or equity, have any standing in court. It is only by
this indirect appeal that the court would listen to them for
a moment.

"Fraud vitiates all things into which it enters" is a maxim
of the law. The defendants were guilty of actual and wil-
ful fraud. It seems like a bit of sophistry to allow the de-
fendants to slip in the back door, to this court when they
would be repelled from the front door—the door open to all
honest suitors. The distinction was too subtle, too refined,
to appeal to the conscience of the trial court. I think the
distinction is too ingenious, the reasons too metaphysical,
to appeal to the conscience of this court. Wilful fraud is
iniquitous—it is criminal. It deserves nothing by way of
reward at the hands of the court; it is denounced by every
jurist. It is hated by all decent people. It should not be
dignified by any decree or made respectable in any forum
of justice.

I can see no justice in compelling the plaintiffs to turn
over to defendants one cent to which neither law nor equity
entitles them. I fear the court sanctifies fraud instead of

castigating it.    It encourages when it should discourage.    It gives hope when it should instill fear.    The criminal cheat may secure property through fraud, pay out money to protect his ill-gotten gains in the hope that he may not be detected, and then rely on a court of equity for relief when he is caught.

If this were a case of constructive fraud only, I could readily assent to the majority opinion, but I decline to come to the aid of the perpetrators of wilful fraud in order to relieve them from the effects of their actions while carrying out a part of their fraudulent transactions.

Even by the decision of the trial court the plaintiffs are not made whole.    Far from it.    One half of their property goes for attorneys' fees, and they have to pay many expenses of trial because of the fraud perpetrated upon them. Now, by reversal of the trial court on this one point, the judgment of this court carries costs against the plaintiffs although they were sustained on all other errors assigned. Thus the plaintiffs will have but the shadow of victory in the action instead of the substance.

The case of *Hawley v. Tesch,* 88 Wis. 213, 59 N. W. 670, may readily be distinguished from the case at bar.    In the *Hawley Case* an *accounting* was demanded and had in an estate involving a very large sum and hundreds of transactions running over a term of years.    The trial court allowed the taxes paid as an offset, but disallowed very valuable improvements made on the real estate involved.    This court on appeal sustained the trial court as to the allowance of taxes, without citation of authority, on the theory that the fraudulent grantee's duties in that case were those of a trustee, and failure to pay the taxes would have been an additional wrong.    There the court, under all the circumstances, was satisfied that the judgment of the trial court was just.

As I have pointed out, the case at bar presents no such situation.    It involves a single farm owned by poor people,

who were enmeshed by a band of organized crooks in such a way that to extricate themselves they had to surrender one half of their estate to their lawyers, and besides had to pay large sums for expense of the trial. No accounting was involved. After their recovery they will have little, if anything, left. The trial court correctly considered the equities.

The true principle, as I conceive it, for a court of equity to adopt is the one stated in *Leqve v. Stoppel,* 64 Minn. 74, 66 N. W. 208. It is there said:

"To meet the requirements of justice in all these classes of cases, a more elastic rule should obtain than the mere presence or absence of actual fraud, in its broadest legal sense. And an examination of the adjudged cases shows that the courts have never been inclined to tie themselves down to any such hard-and-fast rule. . . .

"The best American authorities have frequently announced a similar flexible rule, which left them at liberty to do equity in each particular case according as the facts appeared."

The weight of authority I think is against the position taken by the majority opinion in this case. See the following cases cited in respondents' brief: 27 Corp. Jur. p. 673, § 464, and cases cited; *Leqve v. Stoppel,* 64 Minn. 74, 86, 66 N. W. 208; *Lynch v. Burt,* 132 Fed. 417, 432; *Stephon v. Topic,* 147 Minn. 263, 180 N. W. 221; *Allen v. Berry,* 50 Mo. 90, 91; *Thompson v. Bickford,* 19 Minn. 17, 21; *Strike v. McDonald & Son,* 2 Har. & G. (Md.) 228; *Lynch's Adm'r v. Murray,* 86 Vt. 1, 83 Atl. 746; *McGovern v. Milwaukee M. Co.* 141 Wis. 309, 313, 124 N. W. 269; *Davis v. Leopold,* 87 N. Y. 620; *Seivers v. Dickover,* 101 Ind. 494, 498.

Owen, J. I concur in the foregoing dissenting opinion of Mr. Justice Crownhart.