In re Norcor Manufacturing Company: Schultz and
others, Appellants, vs. Acme Chair & Metal Crafts
Company, Respondent.

*December 8, 1936—January 12, 1937.*

464

For the appellants there was a brief by *Young, Everson & Ryan,* attorneys for the receivers, and by *Victor J. O'Kelliher,* attorney for certain creditors, all of Green Bay, and oral argument by *Mr. O'Kelliher.*

For the respondent there was a brief by *Silverwood & Fontaine* of Green Bay, and oral argument by *T. P. Silverwood* and *Seymour N. Cohen* of Chicago, Illinois.

FAIRCHILD, J.  A motion to substitute Joseph J. Schmitt as a party to these proceedings and to this appeal in the place of the Acme Company has been made.  The objection to such substitution on the part of the Norcor Company, by its receivers and creditors, is that the Acme Company is not a good-faith corporation; that it was illegally organized to enable attorneys to prosecute the case under an arrangement which is "unlawful and savoring of champerty and maintenance;" that the result of the transactions by the organizers of the company is to create a corporation for the practice of law; and that its acts in connection with this case are illegal. In order to sustain the many objections, we would have to read into the transactions of Schmitt and those with whom he dealt in endeavoring to finance this contest with the Norcor Company a number of factors that do not appear so readily as they are vigorously stated by the receivers and creditors.  Schmitt had a valid claim against the Norcor Company.  He assigned it to one Ginocchio, who organized a corporation, to which he assigned the claim.  Meritorious

reasons for the maneuver may be as readily assigned as may base motives. The presumptions of good faith on Schmitt's part are not overcome in this collateral attack upon the dealings of Schmitt with Ginocchio and his corporation in the record now before us and are sufficient to give the acts of Schmitt a *prima facie* propriety. We do not find it necessary here to inquire further. When the right of the Acme Company to act as the claimant was challenged, it surrendered its rights, under any claim it may have had, to Schmitt. The money advanced by the Acme Company in this litigation was returned to it, and Schmitt seeks to be reinstated as claimant. A valid claim exists in favor of Schmitt or his lawful assigns. *Acme Case, supra.* We see no objection to resorting in this case to the practice used in the case of *Blixt v. Janowiak,* 177 Wis. 175, 188 N. W. 89, and to recognizing the rescission by the parties of the challenged agreement. Under the circumstances here presented, it is proper to permit the rescission by the parties thereto of the allegedly champertous agreement, and the return of rights to Schmitt without dismissing the action. The claim being valid and one which the Norcor Company owes by reason of the contract with Schmitt, the substitution of Schmitt, formerly and now the owner of the claim, as claimant here, is allowed.

The Acme Company, plaintiffs in the first action, filed its claim December 31, 1932, in the receivership proceedings for royalties due under the contract. On January 30, 1933, and on December 19, 1935, the orders described in the statement of facts were made and entered. There being no appeal from the order of January 30, 1933, and the order of December 19, 1935, in so far as it reviews and comfirms the former order not being appealable (sec. 274.33, Stats.), the appeal from that part thereof must be dismissed. The only questions are as to the validity of the claim for excess royalties, of the claim of renewal of the contract for the

fourth year, and whether any portion of the claim is entitled to a preference.

The Norcor Company entered into the contract with Schmitt to secure from Schmitt certain rights with reference to the manufacture of a folding chair which each believed Schmitt controlled. The agreement was made by the Norcor Company to secure certain advantages which it now claims it could have properly made use of without payment to Schmitt of a large sum of money. Schmitt insists he sold his rights to the Norcor Company, refrained from engaging in the manufacture of chairs, and is entitled to his payment. He had arranged for a method of constructing a folding chair with some novel features possessing sales possibilities, applied for a patent, and was intending to engage in the manufacture of the chairs. His plans were changed by the inducement of the Norcor Company and such rights and information as were his were sold to it. The Norcor Company acquired something of value under the contract entered into with good faith on the part of each. It is a valid contract and its effectiveness was determined in the *Acme Case, supra.* It follows that Schmitt is entitled to the benefits of the contract as provided therein, and the evidence sustains the inference that there were sold during the second year of the contract chairs sufficient in value to entitle Schmitt to the excess royalties allowed in the order. The part of the order appealed from by the receivers of the Norcor Company, which allows the claim covering the excess royalty of $358.96 for the second year, is affirmed.

Claimant appeals from the order denying him allowance for royalties during the fourth year, commencing in June, 1932. He claims to be entitled to $10,000, and that since the Norcor Company was in the hands of the receiver for eleven months and two days of the fourth year, $9,166.66 thereof should be held to be a receivership expense and

$833.34 a claim against the estate. The royalties agreed upon were five per cent of the invoice price of each chair sold under the application for patent and any patent issued thereon during the existence of the contract. As already indicated, the contract was to run for three years, and if more than one hundred thousand chairs were made and sold during the third year, the contract was to renew itself for the further period of one year. The dispute out of which Schmitt's appeal arises is over the number of so-called Schmitt chairs disposed of by the Norcor Company during the third year of the contract. The claim on Schmitt's part is that one hundred seventy-three thousand five hundred thirty-four chairs were sold during that year and that that fact, by virtue of the terms of the agreement, renewed the contract for an additional year. The trial court reached the conclusion that there was a failure to prove any relationship between the application for a patent and the patent issued and the one hundred thousand or more chairs disposed of by the Norcor Company during the third year of the contract. Exhibits 5, 6, and 7 in the evidence are chairs similar to and practically the same, mechanically, as the chairs manufactured during the period of time covered by the transactions ruled upon in the *Acme Case, supra.* They were made, with some features added, upon the plan devised by Schmitt; the arrangement being to effect a combination of the elements in the make-up of the chair so that they will be nested together in a compact form when the chair is folded. The plan was to provide a chair with a pivoted seat and pivoted rear legs capable of being positioned respectively within the back and between the front legs. In the specifications it was stated:

"With the foregoing and other objects in view the invention consists of the novel construction, combination and arrangement of parts as hereinafter more specifically described, and illustrated in the accompanying drawings

wherein is shown an embodiment of the invention, but it is to be understood that changes, variations and modifications can be resorted to which fall within the scope of the claims hereunto appended. . . .

"It is thought the many advantages of a folding chair, in accordance with this invention can be readily understood, and although the preferred embodiment of the invention is as illustrated and described, yet it is to be understood that changes in the details of construction can be had which fall within the scope of the invention as claimed."

Although these quoted sections are not controlling, they may serve to illustrate the possible inclusions of equivalents while still within the scope of the scheme of the originator.

The evidence establishes the manufacture and sale of more than one hundred thousand chairs during the third year. That these chairs are fairly chargeable under the contract between Schmitt and the Norcor Company seems clear. The chair which Schmitt had built and was seeking to protect by a patent before entering into the contract was offered in evidence and is referred to in the record as Exhibit 10. The other chairs involved were ruled to be within the contract in the *Acme Case*. Any finding to the contrary is against the great weight and clear preponderance of the evidence. The testimony of Schmitt is positive in its identification of the chairs. Testimony of witnesses experienced in patent matters, while differentiating certain of the chairs in evidence from the descriptions of the patent, was to the effect that the prior art did not show the combination of elements upon which the Schmitt application was built; that each of the elements found its counterpart in function and operation in each of the chairs in evidence. A review of the testimony, if considered independently of the preceding trial, leads to the conclusion that the Schmitt chair was a novel combination of elements present in his application and in Exhibit 10, the chair first made by the Norcor people under the contract,

as well as in the remaining chairs, Exhibits 5, 6, and 7, made during the years 1929, 1930, 1931, and 1932.

The claimant refused to consider the contract at an end, and at all times consistently claimed that the use of the practical information as well as such protection as given by the application for a patent covering the elements and the particular combination thereof and the patent entitled him to the benefits provided for in his contract. The various modifications of the style as to shape and upholstery which the Norcor people created did not destroy or take out of the chair the inventive work which Schmitt sold to them. Schmitt had devised an efficient and serviceable process in the construction of a folding chair. It was these that were bargained for under the contract. It does not seem to be necessary to analyze the testimony further than to make the observation that the figures in the tabulation of chairs disposed of in the third year relied upon to show the number of chairs manufactured and sold during that year were figures coming from the Norcor Company itself.

The receiver testified that after his appointment he conferred with the attorneys, knew why the receiver was appointed, knew there had been a contract with Schmitt, that an accounting was to be had under the decision in the *Acme Case;* and that he was told to go on making the chairs. He said:

"I knew in a general way how the chairs had been constructed before the receivership and we went right on making chairs. To me they were mechanical folding chairs."

Mr. Krueger, who was president of the Norcor Company, had testified in the *Acme Case,* and this testimony was before the court at the time the decision was made:

"I learned that other chairs on the market infringed on our chairs about three or four months after we signed the contract. We manufactured this chair after that. We

manufactured this chair since 1929 up to the present time. I thought the contract was broken. When we refused to, didn't pay any further payments, we didn't consider there was a contract in force after that time. But we continued to make and sell the chair."

The receiver, since his appointment, operated under the contract and obtained the advantages of it to the extent that chairs were manufactured and sold by him. To that extent alone should Schmitt's claim be preferred to that of other general creditors. The royalties of five per cent per chair, provided for in the contract, must, in equity and fairness, be considered as an operating expense and allowed as such. There is no merit in proportioning the $10,000 claim merely on the basis of time elapsed during the fourth year before and after receivership, as proposed by claimant. The acts of the company in the third year of the contract had fixed a liability for $10,000 in the fourth year, which would come due whether chairs were manufactured or not. That liability was the company's before the receivership, and it is the basis of the claim against the estate, subject to the reduction by the aggregate of five per cent per chair manufactured by the receiver, which is to be allowed as an operating expense of the receiver. The cause must be remanded for the lower court to ascertain the invoice price of chairs manufactured and sold by the receiver in the fourth year, and five per cent of that amount must be allowed as a receivership expense. The balance of the $10,000 must be allowed as a claim against the estate.

*By the Court.*—Appeal from the order confirming the allowance of the claim for $29,938.25 dismissed; order allowing excess royalties amounting to $358.96 affirmed; order disallowing the claim for $10,000 reversed; cause remanded for further proceedings in accordance with this opinion.