In re NORCOR MFG. CO.

SCHMITT v. DE LANEY et al.
No. 6388.

Circuit Court of Appeals, Seventh Circuit.
May 25, 1938.

Seymour N. Cohen and Ralph M. Snyder, both of Chicago, Ill., and T. P. Silverwood, of Green Bay, Wis., for appellant.

Edwin T. Breen, of Chicago, Ill., for appellees.

Before MAJOR and TREANOR, Circuit Judges and LINDLEY, District Judge.

MAJOR, Circuit Judge.

The Norcor Manufacturing Company (formerly known as Northern Corrugating Company, and herein referred to as debtor) is in court pursuant to section 77B of the Bankruptcy Act, 11 U.S.C.A. § 207. Joseph J. Schmitt (herein referred to as appellant) filed his claim as an unsecured creditor in said proceeding. In the meantime, and before adjudication of appellant's claim, Winifred V. DeLaney, (herein referred to as appellee) as assignee of John V. DeLaney, filed her claim in said proceeding against the debtor wherein she denied that appellant had a claim, asserted that the title to his so-called claim was in the Acme Chair and Metal Crafts Company (herein referred to as Acme Company), and that appellee, as a stockholder, of said company, was entitled to her proportionate share of said claim. This claim, as well as those of other creditors, was referred to a special master for hearing, determination and report. By agreement of parties, the hearing and report were had upon appellee's claim in advance of other claims. The special master recommended the allowance of appellee's claim, and this appeal is from an order of the court approving the action of the master.

The facts leading up to the controversy are briefly as follows: Appellant invented a certain folding chair and made application for a patent. On June 3, 1929, he entered into a written contract with the debtor, whereby said company was to have the exclusive right to manufacture said chair for a period of three years, for which it agreed to pay him five per cent of the invoiced price of each chair, with a minimum payment of $10,000 per year. The contract had provision for the renewal thereof from year to year after the original period. A controversy arose between the parties concerning this contract and appellant employed Eugene C. O'Reilly and John V. DeLaney, attorneys, to represent him in its enforcement. A verbal agreement was had that they should take the case on a contingent fees basis, each of them to receive one-sixth of the amount realized, without expense to the attorneys. The legal firm of Silverwood and Fontaine of Green Bay, Wisconsin, were employed and suit instituted by them in the State Court of Wisconsin, which resulted in protracted litigation, as will be hereinafter referred to. Neither DeLaney nor O'Reilly participated actively in that litigation, although it seems their names appeared, as a matter of courtesy, on briefs submitted on behalf of appellant.

On April 30, 1931, appellant sold, assigned, transferred and set over unto the Acme Company all his right, title and interest in and to said contract with the debtor corporation, for a consideration of $100 in cash and a $5000 note executed and delivered by the Acme Company, signed by John V. DeLaney as President of said Corporation. On the same day of the assignment, there was issued by the Secretary of the State of Illinois, a Certificate of Incorporation to the Acme Company, which discloses that John Ginnochio subscribed and paid for 333 shares, John V. DeLaney subscribed and paid for 84 shares and Eugene C. O'Reilly subscribed and paid for 83 shares, making a total of 500 shares of the par value of $10 each. It is conceded that none of the shareholders paid any money for such shares, but the charter discloses, on its face, that the corporation received as payment for said shares the contract assigned to it by appellant. It appears that shortly before the assignment, appellant had a verbal agreement with John Ginnochio to sell him the contract, and that the corporation merely assumed this verbal agreement which Ginnochio had with appellant. It seems apparent from the record that none of the stock of the Acme Company was issued or delivered. At any rate, John V. DeLaney testified that none was issued so far as he knew and that he never received his.

There is a marked dispute as to just what the agreement was among the various

parties at the time of the assignment of appellant's contract to the Acme Company. It was appellant's contention, supported by O'Reilly and Ginnochio, that there was an agreement that DeLaney was to receive 84 shares and O'Reilly 83 shares when their services were completed in the prosecution of appellant's contract against the debtor corporation, which had been assigned to the Acme Company; while it is the contention of DeLaney that the shares of stock were issued or to be issued in consideration of the services which had been rendered prior thereto. There is also a dispute as to the purpose of the organization of the Acme Company. At the time of its organization and at all subsequent times, it owned no property or assets except the contract assigned to it by appellant. It had no business and pretended to have none except the prosecution of the litigation growing out of this contract. DeLaney testified that the corporation was to enable appellant to place his property beyond the reach of his creditors and also that there might be a diversity of citizenship so that the litigation might be transferred to the Federal Court. He also testified that Ginnochio was never the actual owner of the 333 shares of stock, but that he merely held the same for appellant. This version as to the purpose of the corporation is denied by Ginnochio and O'Reilly, but we are unable to ascertain from their testimony what other purpose could have actuated the parties. It was claimed by DeLaney that he performed legal services for the Acme Company for a year after its incorporation, at which time he was stricken with an ailment from which he has never recovered. It is not claimed that he rendered any legal service to the Acme Company subsequent to that time and in fact the record discloses that such services as he rendered during the first year were of minor importance and consequence. The following year DeLaney was disbarred as an Attorney by the Supreme Court of Illinois.

On the 5th day of May, 1931, the Acme Company ratified the assignment to it of the contract of appellant and elected DeLaney as President, Ginnochio, Treasurer, and O'Reilly, Secretary of the Corporation. At a similar meeting on May 5, 1933, the record discloses as present, the following stockholders: Ginnochio, O'Reilly and Thomas F. Hanley, who was elected Treasurer. Whether Hanley at that time was a stockholder, and if so, in what manner he acquired his stock, the records of the corporation are silent. Neither do they disclose what disposition, if any, was made of the stock which was purported to be held by DeLaney. The next meeting of the Board of Directors and Stockholders was held on the 22nd day of May, 1936, when, according to the minutes of the corporation, the following directors and stockholders were present: Ginnochio, O'Reilly and Hanley. At this later meeting, which purports to be a meeting of all the stockholders and directors, a resolution was adopted reciting the assignment made to the Acme Company by appellant on April 30, 1931, that the claims involved in said assignment had been prosecuted against the debtor in the Circuit and Supreme Courts of Wisconsin and in the bankruptcy proceedings under section 77B and that "Whereas certain questions have arisen as to the validity of the assignment by the said Joseph J. Schmitt to the said Acme Chair and Metal Crafts Company of the contract aforementioned"; that the Acme Company having agreed to cancel the assignment of the contract made to it by appellant and the claims arising thereunder, that it is agreed to reassign and restore to appellant, full title to said contract and all rights thereunder. By said resolution the assignment was cancelled and set aside and all rights of the corporation transferred and restored to appellant, with full power on his part to prosecute said claims in his own name. Said action was consummated by the return of the note to the corporation by appellant and of the payment by him of the sum of $1491.59, which it was agreed the Acme Company had expended in the prosecution of said claims. In the meantime, extensive litigation was carried on in the Courts of Wisconsin in the name of the Acme Company, as plaintiff, and the Norcor Manufacturing Company, defendant, which reached the Supreme Court of that State on three different occasions (Acme Chair & Metal Crafts Company v. Northern Corrugating Company, 209 Wis. 8, 243 N.W. 415, 244 N.W. 582 and In re Norcor Mfg. Co., 223 Wis. 463, 271 N.W. 2). In the last of these cases one of the defenses urged against the Acme Company was that its lawyers were barred from further prosecuting its claim because of champerty and maintenance. We quote from page 3 of 271 N. W. of the last cited case:

"When the right of the Acme Company to act as the claimant was challenged, it

surrendered its rights, under any claim it may have had, to Schmitt. The money advanced by the Acme Company in this litigation was returned to it, and Schmitt seeks to be reinstated as claimant. A valid claim exists in favor of Schmitt or his lawful assigns. Acme Case, supra. We see no objection to resorting in this case to the practice used in the case of Blixt v. Janowiak, 177 Wis. 175, 188 N.W. 89, and to recognizing the rescission by the parties of the challenged agreement. Under the circumstances here presented, it is proper to permit the rescission by the parties thereto of the allegedly champertous agreement, and the return of rights to Schmitt without dismissing the action. The claim being valid and one which the Norcor Company owes by reason of the contract with Schmitt, the substitution of Schmitt, formerly and now the owner of the claim, as claimant here, is allowed."

It will thus be seen that the Supreme Court of Wisconsin recognized the rescission by Acme Company of the assigned contract and, as a result thereof, appellant was substituted as a party plaintiff for the purpose of prosecuting the claim. This action of the Wisconsin Court, in our opinion, explains the reason for the action of the Acme Company of May 22, 1936, in cancelling the assignment made to it by appellant.

On May 20, 1932, John V. DeLaney executed and delivered to his wife, (appellee), the following instrument:

"Chicago, Illinois—May 20, 1932.

"For and in consideration sum of ($10.) Ten Dollars and other good and valuable considerations, to me in hand paid, the receipt of which is hereby acknowledged, I hereby assign, sell, set over, give and deliver to Winifred V. DeLaney any and all my interest, or proceeds that may be derived therefrom from or thru or interested in a certain action known as Acme Chair & Metal Crafts Company v. Northern Corrugating Company of Green Bay, Wisconsin, now pending in Supreme Court of Wisconsin to be hers both as to right to receiving and right of action to do as she sees fit.

"J. V. DeLaney.
"Witness: Julia Whalen"

It is the contention of appellee that John V. DeLaney, at the time of the execution of said instrument, was the owner of 84 shares of the stock of the Acme Company which by said instrument was assigned to her and that she then became the owner thereof. While the instrument makes no mention of stock, the master in chancery permitted oral testimony that the parties to the instrument intended to include said stock and found as a fact, that by reason of said instrument, appellee became the owner thereof. Appellant contends that the instrument is plain and unambiguous and that parol testimony was improperly received; that without such testimony there is no evidence supporting the finding that appellee became the owner thereof. In view of other questions which will control our decision, we do not deem it necessary to determine the question thus raised. If we should decide that appellant is correct in his contention, it would merely mean that the claim was prosecuted in the name of appellee, when it should have been prosecuted in the name of John V. DeLaney, and nothing would be settled as to the merits of the appeal. We shall, therefore, treat appellee as having the same right by virtue of this alleged instrument, to prosecute the claim as would have John V. DeLaney had there been no assignment.

Assuming that appellee was the owner of 84 shares of stock of the Acme Company, is she entitled to an allowance of a claim to the extent of 84/500 of the amount allowed to appellant on his claim against the debtor corporation? Notwithstanding the fact that the Acme Company, as heretofore related, cancelled and relinquished to appellant all its interest in the contract in question, which rescission was recognized by the Supreme Court of Wisconsin, by permitting appellant to be substituted for the Acme Company as a claimant, it seems to be the contention of appellee that said cancellation and rescission was void and of no effect because of the failure of the Acme Company to comply with section 72 of the Illinois Corporation Act, Ill.Rev. Stat.1937, c. 32, § 157.72, which provides in part that "a sale, lease, exchange, mortgage, pledge, or other disposition of all, or substantially all, of the property and assets, with or without the good will, of a corporation, if not made in the usual and regular course of its business" may be made by (a) the Board of Directors adopting a resolution recommending the sale, (b) by a notice to stockholders, and (c) by the authorization of the shareholders of two-thirds of the outstanding shares. It is not disputed that either John V. DeLaney or appellee, failed to receive any notice of the meeting of the directors and stockhold-

ers of the Acme Company held on May 22, 1936, at which the assignment of the contract in question was rescinded. They were entirely ignored with reference to such action. If appellee's contention is sustainable and the action of that date declared void, it would mean appellant is without right to prosecute the claim against the debtor corporation and that the claim would revert to and become the property of the Acme Company. This places appellee in the position of urging that the action of the Acme Company is void, that appellant was not restored to his former rights against the debtor and still claim that she is entitled to a part of any amount which may be awarded him by virtue of said claim. This inconsistent position is sought to be reconciled by the suggestion that while the Acme Company and its officers and directors who rescinded and cancelled the assignment are estopped to deny it validity, she is entitled to enforce it. The answer to such contention lies in the fact that neither the Acme Company nor its officers are parties to the controverted question and so far as the record discloses, have no interest therein. It was appellant who filed objection to appellee's claim and certainly no doctrine of estoppel could be made applicable as to him. So we conclude that even if the action of May 22, 1936, is void, as urged by appellee, we would be compelled to hold that she has no interest in the claim in question.

We might conclude here and thus dispose of this appeal, but to do so would perhaps further aggravate a confused situation. Especially is this true in view of what has been said by the Supreme Court of Wisconsin heretofore referred to.

■ We are of the opinion that the section of the Illinois Corporation Act referred to and relied upon by appellee is not applicable. This act was enacted in 1933, and so far as we are advised, has not been construed by an Illinois Court with respect to the question here presented. This record indicates that the Acme Company was fraudulent from its inception and it is doubtful, in our minds, if it, at any time, had any legal right to prosecute this claim against the debtor. Whether or not this impression is justified, it is a fact that when it was charged in court of being guilty of champerty and maintenance and without a right to prosecute its claim by reason thereof, the cancellation and rescission of the assignment was made

and in recognition thereof, the court of Wisconsin permitted appellant to be substituted as plaintiff. Such a cancellation and rescission can not, in our judgment, come within the purport of section 72 of the Illinois Corporation Act. It amounted to nothing more than the undoing of something which was wrong in its inception and in which John V. DeLaney played an important, if not a leading role. It was neither a "sale, lease, exchange, mortgage, pledge, or other disposition of [its] property" but merely the relinquishment of a pretended right in order to escape a serious charge preferred in the State Court of which the court was about to take cognizance, if it did not actually do so.

■ If the Act be held applicable, however, the position of appellee can not be sustained. The record of Acme Company, on its face, discloses that all the directors and all the stockholders agreed to the resolution of rescission and cancellation. We know of no law which would require appellant, when dealing with the corporation, to make an investigation to determine who might own stock other than that shown by its books. There is nothing to show that appellant had notice or knowledge of any irregularity which might have existed. In Thomas v. Citizens' Horse Railway Company, 104 Ill. 462, the court considered the effect of the unauthorized acts of the directors of the corporation under the Corporation Act then in effect. The statute required the concurrence of two-thirds of the stockholders of the corporation in order to borrow money, and that they be notified of such meeting. The statute in this respect was not complied with, but the court in deciding the question, on page 468 said:

"The statute conferred upon the Belleville railway company power to borrow money, and secure the same by mortgage, and although the directors did not observe strictly all the requirements of the statute in making the mortgage, the defective execution of the power conferred by the statute did not vitiate the mortgage."

■ In Ashley Wire Company v. Illinois Steel Company, 164 Ill. 149, 45 N.E. 410, 56 Am.St.Rep. 187, the court considered the effect on a stranger of the unauthorized act of the officers of a corporation and on page 156, 45 N.E. on page 412 said:

"There are cases where it has been held essential to the validity of an instrument that the meeting at which it was au-

thorized was called in accordance with the rules governing the relations between the corporation and its agents, but they have never been recognized as affecting strangers to the corporation in this state. * * The necessities of business require that the public, dealing with their officers in good faith on the strength of apparent power, should be protected against such claims as are here made. The courts of this state have always protected third parties dealing in good faith with corporations within the general scope of their powers."

It would seem logical and reasonable that appellee could not be placed in a more advantageous position because of non-compliance with the Illinois Corporation Act in the cancellation and rescission of the assignment in question, than she would have been had the Act been complied with; yet this would result in sustaining her position. The statute requires affirmative action of the holders of at least two-thirds of the outstanding shares of stock in order to effectuate a sale, etc., of the corporate property. Section 73 of the act, Ill.Rev.Stat.1937, c. 32, § 157.73, provides a remedy which a dissenting stockholder may pursue in protecting his rights. If it be conceded that appellee was the owner of 84 shares of stock, yet there was present and voting in the affirmative, the holders of 416 shares, or far more than the two-thirds majority required. Had DeLaney received a notice of the meeting and attended the same, the most that he could have done would have been to show his disapproval of the action taken. Under such circumstances, surely no one would contend that he or his assignee would have any basis for maintaining a claim against appellant or the debtor. His remedy is provided by section 73 referred to. To hold that a dissenting stockholder may maintain a cause of action against a third party and a stranger to the proceeding merely because of a failure of notice of a meeting at which corporate action is taken with reference to the transfer of its property, would be to place a construction on the statute which would open the way to the perpetration of fraud, which could not have been contemplated and certainly can not be countenanced.

It is said, however, the court below enjoined appellee from pursuing any other remedy which he might have. To what extent the court went in this respect, we are not advised, but it would seem there could be no justification in preventing appellee from pursuing any remedy not inconsistent with or connected with the reorganization proceedings where appellee was seeking to maintain a claim.

A motion is pending to dismiss the appeal for the reason that the transcript of record was not filed within the time fixed by Rule 14 of this court. This is a discretionary matter and under the circumstances appearing, we are not disposed to allow such motion. It is also urged that the appeal should be dismissed for the reason that the order appealed from is not final and the amount to be recovered is uncertain. It is evident, however, that the order is final and certain as to an amount in excess of $500 and we are not disposed to dismiss the appeal for such reason.

The order appealed from is reversed with directions to disallow appellee's claim.